In the Matter of CHARLES J. GORDON, Appellant, against GEORGE P. MONAGHAN, as Commissioner of the Police Department of the City of New York, Respondent.

Argued October 10, 1955; decided December 1, 1955.

---

* Designated pursuant to section 5 of article VI of the State Constitution in the temporary absence of DESMOND and DYE, JJ.

*George W. Herz* for appellant. I. Appellant's written application for a leave of absence without pay, pending the effective date of his retirement, was self-executing. Therefore, the commissioner had no discretion to deny the request. (*Matter of Boulevard Theatre & Realty Co.,* 195 App. Div. 518, 231 N. Y. 615; *Matter of Douglass,* 46 N. Y. 42; *Hardmann* v. *Bowen,* 39 N. Y. 196; *Escoe* v. *Zerbst,* 295 U. S. 490; *People* v. *Sutcliffe,* 255 App. Div. 299; *Matter of Pierne* v. *Valentine,* 291 N. Y. 333.) II. If the request for a leave of absence is not mandatory and self-executing, then Local Law No. 44 of 1951 of the City of New York violates section 10 of article I and the Fifth and Fourteenth Amendments of the Constitution of the United States, and section 7 of article V of the New York State Constitution. (*People ex rel. Fitzpatrick* v. *Greene,* 181 N. Y. 308; *Gorman* v. *City of New York,* 280 App. Div. 39; *Roddy* v. *Valentine,* 268 N. Y. 228; *Matter of O'Brien* v. *New York State Teachers' Retirement Bd.,* 215 App. Div. 220, 244 N. Y. 530.) III. The order of dismissal was arbitrary and capricious. The record

is barren of any evidence that appellant was guilty of conduct unbecoming an officer or of conduct prejudicial to good order and efficiency of the department or of violation of rules and regulations.

*Peter Campbell Brown*, Corporation Counsel (*Henry J. Shields* and *Seymour B. Quel* of counsel), for respondent. I. The provision of Local Law No. 44 of 1951 of the City of New York (Administrative Code, § B18–4.0), providing for the allowance of a thirty-day leave of absence at the " request " of a member of the police department when he files an application for retirement, does not in itself effect a leave of absence. When granted the leave of absence does nothing more than relieve the member from the performance of duty; it does not excuse him from the application of other rules of the police department. (*Gorman* v. *City of New York*, 280 App. Div. 39, 304 N. Y. 865; *Matter of Pierne* v. *Valentine*, 291 N. Y. 333; *People ex rel. Davison* v. *Williams*, 213 N. Y. 130; *People ex rel. MacNish* v. *Waldo*, 212 N. Y. 348.) II. Petitioner's retirement application never became effective, since his term of employment had been forfeited because of absence for five days without leave prior to the date specified for his retirement in the application filed by him for that purpose. (*People ex rel. Clifford* v. *Scannell*, 74 App. Div. 406, 173 N. Y. 606; *McAvoy* v. *Press Pub. Co.*, 114 App. Div. 540; *Majewski* v. *Farley*, 203 App. Div. 77; *People ex rel. Donovan* v. *Board of Fire Comrs. of City of N. Y.*, 77 N. Y. 153; *People ex rel. Fahy* v. *York*, 49 App. Div. 173, 163 N. Y. 551; *People ex rel. Grogan* v. *York*, 51 App. Div. 502; *Matter of Nelson* v. *Partridge*, 78 App. Div. 645; *Schieffelin* v. *Enright*, 200 App. Div. 312.) III. Petitioner's " request " for a leave of absence was not self-executing, since the provision in Local Law No. 44 of 1951 of the City of New York that the member " shall be granted " a leave of absence contemplated action by the police commissioner before the leave of absence could become effective. (*Matter of Evans* v. *Monaghan*, 306 N. Y. 312; *People ex rel. MacNish* v. *Waldo*, 212 N. Y. 348; *Matter of Breen* v. *New York Fire Dept. Pension Fund*, 299 N. Y. 8; *Matter of Dr. Bloom Dentist, Inc.*, v. *Cruise*, 259 N. Y. 358.) IV. There was substantial evidence in support of the charges against petitioner of misconduct as a member of the police **department.**

FROESSEL, J. On April 22, 1952, petitioner, a police lieutenant with nearly twenty-seven years of active service, filed a written application for retirement from the New York City Police Force effective May 22, 1952. Accompanying it was a written application for thirty days' leave of absence without pay, effective 12:01 A.M. the next day, April 23d, and terminating at the time his retirement would take effect. At the same time, he surrendered his badge and revolver. He had, during his period of active service, contributed regularly to the Police Pension Fund, and, as of the date of filing said applications, there were no charges pending against him.

The following day, April 23d, petitioner departed from the city. He left no forwarding address, there being no regulation then in effect which would require him to do so, although such a regulation was enacted ten days *after* he had left. Immediately prior to the filing of said applications, petitioner had been on sick leave and did not " report off sick report " or communicate with the police surgeon, although regulations provided that members of the force on sick report " shall not leave their residence or place of confinement except by permission of the district surgeon ".

Petitioner's commanding officer and inspector both approved his application for leave of absence without pay on April 23, 1952, as did the assistant chief inspector on April 24th. However, on April 25th, the acting chief inspector and the police commissioner disapproved petitioner's application. On May 12, 1952, charges were filed by the police surgeon with the police commissioner, alleging the following violations against petitioner:

1. Absence from his residence without permission of the police surgeon from April 24 to May 3, 1952.

2. Failure to report to the grand jury " as directed " and as " ordered " on April 22, 24 and 29, 1952.

3. Failure to report before a special assistant attorney-general as " directed " on April 28 and through May 5, 1952.

4. Failure to appear at the office of the chief surgeon of the police department as " directed " from April 28 through May 5, 1952.

5. Absence without official leave for more than five consecutive days from April 22d to May 12th, the date charges were filed.

With the exception of those allegations concerning petitioner's alleged failure to report to the grand jury on April 22d (paragraph 2 above), and his absence without official leave on the same day (paragraph 5 above) — on the first of which petitioner was ultimately found not guilty, and on the second of which no proof was ever offered and of which no further mention was made at the hearing — all the above purported violations are alleged to have occurred *after* petitioner filed his applications for retirement and leave, and *after* the effective date of said leave of absence.

Petitioner, while absent from New York City, was served with a notice of hearing with respect to these charges by the same method which had been employed to " direct " and " order " him to appear before the police surgeon, the assistant attorney-general and the grand jury just prior to, and resulting in, the filing of charges against him — by a form of substituted service provided by police regulations, specifically by the posting of such notices upon a bulletin board at the precinct to which he was assigned and by leaving copies thereof at his residence. Petitioner did not appear at the hearing held on May 16, 1952.

At that hearing, testimony was introduced to show that petitioner had been absent from his residence since *April 23, 1952,* one day after filing his applications for retirement and for leave. Although orders dated *subsequent* to April 22, 1952, were shown to have been issued, as aforesaid, directing petitioner to appear at the times and places mentioned in the charges above, there was no showing that petitioner received actual notice or personal service of any of the orders, directives or subpœnas. The sum of the evidence against petitioner was his departure *after* filing written applications for retirement and leave and his continued absence during the period of the leave specified in his application therefor.

Petitioner was found guilty of the above infractions (with the exception noted above), and upon the recommendation of the hearing commissioner was dismissed from the force on May 19, 1952 — thereby losing his accrued rights to a life pension of one half the annual salary he was receiving when retired, or about $2,850 per year.

The question presented on this appeal is simply whether petitioner, under the laws, rules and regulations *then in effect,* had any obligation to remain available to, and in contact with, the police department after the time his filed application for terminal leave of absence was to take effect by its own terms. In short, was there any duty *thereafter* which he, on this record, could be found to have breached?

Petitioner has contended that, having completed his more than twenty-five years of service in the department, he had an absolute right to file for retirement; that under Local Law No. 44 of 1951 of the City of New York (Administrative Code of City of New York, § B18–4.0, as amd.), he was entitled to be retired after the passage of thirty days from April 22, 1952, the time of his application, there being no charges pending or filed against him on that date, and no subsequent charges relating to his conduct on or prior to that date, said law declaring, in relevant parts:

" Any member who  *  *  *  2. Shall have elected to contribute on the basis of retirement after twenty-five years of service and who has  *  *  *  performed service in the force for at least twenty-five years, *upon his own application* in writing to and filed with the board *setting forth at what time,* not less than thirty days subsequent to the execution and filing thereof, *he desires to be retired, shall be retired as of the date specified* in said application  *  *  *  and awarded  *  *  * an annual pension  *  *  *  provided further that at the time so specified for his retirement his term or tenure of office or employment shall not have terminated or have been forfeited " (emphasis supplied); that further, and of central importance here, by the same statute — which continues: " provided further that *upon his request* in writing the member *shall be granted* a leave of absence from the date of filing said application until the date the retirement becomes effective " (emphasis supplied) — petitioner's simultaneous application for leave of absence *mandated* the commissioner to grant said leave application; and that after the effective date in the leave application, he was automatically and instantly relieved of police duty and no longer subject to the ordinary commands of

the department. He urges, therefore, that he could not be legally guilty of breach of any duty by failing to comply with *subsequent* orders relating to matters occurring after such effective date to which orders he was no longer subject.

At the outset, this case should be distinguished from that of a retiring police officer who, after filing his applications, refuses to co-operate in the investigation of charges filed against him or relating to his conduct *prior to the date of his application.* It is not the case of one who refuses to respond to a properly served subpœna to appear before a grand jury; nor is this a matter of petitioner's claiming to be immediately excused from duty to the police force as a result of the *mere application* for *retirement* itself (once possible; see *Matter of Pierne* v. *Valentine,* 291 N. Y. 333, but now obviated by the thirty-day waiting period enacted in the 1951 amendment to the aforesaid statute). Rather we are here confronted with a police officer's claim to have been excused by reason of his *application for thirty days' leave* without pay at a time when no charges were pending against him and no police regulation required him to leave a forwarding address.

By virtue of the holding below (1) petitioner's application for leave has been held to be not self-operating and its approval not mandatory, and (2) his absence, in apparent reliance on the automatic operation of that application, and his consequent failure to respond to the substituted service of police orders, have been made the basis for a finding of breach of duty which has cost petitioner his pension benefits and has brought about his dismissal from service on the threshold of his retirement. Such a result is contrary to law and particularly to the clear language of the pertinent statute itself.

Pension rights are " in the nature of compensation for the services previously rendered for which full and adequate compensation was not received at the time of the rendition of such services " (*Matter of Giannettino* v. *McGoldrick,* 295 N. Y. 208, 212), and, as such, ought not to be witheld without legal cause from those with deserving records of service. For this very reason the immediate leave of absence provision was made part of the foregoing 1951 Administrative Code provision. The minutes of the public hearings held thereon make it abundantly

clear that it was enacted to protect retiring policemen from the unwarranted filing of infractions at the last moment for the purpose of cutting off their pension rights. It therefore follows that, during such terminal leave time, retiring policemen may ask for and be entitled to a suspension of police duties and responsibilities, for if the duties of such retiring members remain undiminished, such protection as was expressly written into the law would, in practical operation, afford no protection at all.

Here, then, there could be no survival or extension of such requirements as that petitioner report off sick leave or remain at home, or that he check with headquarters regularly during his leave to see if he was being sought for any reason. Such requirements are by their nature reasonably related only to the performance of active duty. If petitioner's service record was clear when he filed his application, and called for no hearings on any charges then pending or related to his conduct prior thereto, and *if he was on leave* preparatory to retirement, he was freed of obligation to report as aforesaid. Of course, like any other private person, he was at all times subject to a properly served subpœna or summons by any duly constituted tribunal, as a court, a grand jury or the like.

We hold that petitioner was *on leave* from the instant specified in his application, irrespective of the fact that the commissioner, after three of petitioner's superiors had approved said application, finally disapproved the same. The language "shall be granted" in the afore-mentioned statute is clearly mandatory, and where, as here, petitioner's record was as of that moment bare of charges relating to misconduct *prior* to his application for retirement and leave, there was no discretion to be exercised in the granting of leave (see *Matter of Pierne* v. *Valentine, supra,* pp. 343–344; *Matter of Douglass,* 46 N. Y. 42; *Matter of Boulevard Theatre & Realty Co.,* 231 N. Y. 615).

We recognize that the police department may not be deprived of the benefits of the statutory thirty-day notice and waiting period before retirements actually may take effect, i.e., of the opportunity to investigate applicants for retirement and to determine whether *up to the time when their terminal leaves of absence take effect* they had performed their services faith-

fully and in a manner entitling them to pension benefits. But, by the express design of the Legislature, after considering the real necessity for some form of protective legislation, those infractions into which said department may inquire have been limited to those which are alleged or believed to have occurred prior to the filing of applications for immediate terminal leaves of absence.

Thus the granting of leave here was mandatory, and petitioner was, in effect and without further action on the part of the commissioner, on a leave of absence as of midnight, April 22d, and was thereafter no longer subject to general administrative regulations or rules reasonably related only to the active performance of duty. Moreover, while he was subject to the service of subpœnas for any grand jury or other lawful investigations of misconduct alleged to have taken place prior to or during the time of his leave, he was not, according to the *then existing* rules, under any duty to leave word as to his whereabouts — a shortcoming corrected by the forwarding address regulation not adopted until ten days after petitioner departed — and could not lose his pension for failing to leave such word, nor for failing to respond to orders or directions given during such leave by a form of substituted service which the regulations provide in case of the service of charges and specifications.

In sum, petitioner's active service career terminated at midnight of April 22d, a time when his record was clear of charges affecting his right to a retirement pension. All such subsequent charges filed which allege infractions of duty during a period when such active service had terminated erroneously presupposed the existence of active duties. Without duty there could be no breach of duty, and without breach of duty petitioner's dismissal may not stand.

The order should be reversed and the determination of the police commissioner annulled, with costs in this court and in the Appellate Division.

CONWAY, Ch. J., DESMOND, FULD and VAN VOORHIS, JJ., concur; DYE and BURKE, JJ., taking no part.

Order reversed, etc.