Helen WINSTON, Harry Van Gorder and Natalie Vernon, Plaintiffs,

v.

The CITY OF NEW YORK, New York City Teachers' Retirement System, Board of Education of the City School District of the City of New York, Frank J. Macciarola, as Chancellor of the City School District of the City of New York, Board of Education of Community School District 3, Gordon M. Abach, as Commissioner of Education of New York State Department of Education, Defendants.

No. 82 Civ. 1847.

United States District Court, E.D. New York.

Feb. 29, 1984.

James R. Sandner, New York City, for plaintiffs; Richard E. Casagrande, Albany, N.Y., J. Christopher Meagher, New York City, of Counsel.

Antonia Levine, Corp. Counsel of City of New York, New York City, for City of New York.

Robert D. Stone, State Educ. Dept., Albany, Evelyn Tenenbaum, Asst. Atty. Gen. of N.Y., New York City, for state defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The plaintiffs in this suit are teachers presently or formerly employed by the defendant Board of Education of the City School District of the City of New York ("Board of Education"), or one of its component community school districts. They are challenging a provision of State law, codified in Section B20–38.0 of the New York City Administrative Code, that provides that New York public school teachers who are dismissed for cause are ineligible

to receive City-funded retirement benefits. All parties to the action have moved for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, summary judgment is granted in plaintiffs' favor against the City defendants.[1]

## I. Background

### A. Dismissal Procedures

Tenured public school teachers in New York cannot be dismissed from their teaching positions except for cause, after a hearing provided under New York Education Law § 3020–a. Either the teacher or the employing board of education may appeal a hearing panel's decision to an appropriate court or to the Commissioner of Education. N.Y.Educ.Law § 3020–a(5) (McKinney). Teachers such as plaintiff Winston, who serve in a community school district, are subject to removal proceedings by the community school board for any of the following reasons: unauthorized absence from duty or excessive lateness; neglect of duty; conduct unbecoming the teacher's position; incompetent or inefficient service; violation of state or city bylaws or regulations; or "[a]ny substantial cause that renders the employee unfit to perform his obligations properly." N.Y.Educ.Law § 2590–j(7)(b) (McKinney). All other New York City teachers, including plaintiffs Van Gorder and Vernon, are subject to removal proceedings by the New York City Board of Education on a showing of cause. See N.Y.Educ.Law §§ 2573, 3020, & 3020–a (McKinney). Section 3020, which applies to all school districts in the state, provides that a teacher may be removed for "neglect of duty, incapacity to teach, immoral con-

---

1. The text of this opinion has not addressed the merits of defendant Ambach's motion for summary judgment. Defendant Ambach argues that since the plaintiffs' constitutional challenge is directed primarily at § B20–38.0 of the Administrative Code, which is administered and enforced solely by the City defendants, there is no need for him to remain a party to the suit. Until now, this Court has declined to grant defendant Ambach's motion, since there remained a possibility that an injunction restrain-

ing the continuation of the dismissal procedures under § 3020 of the Education Law would become necessary pending the resolution of plaintiffs' claim against the City defendants. Inasmuch as this Court is now disposing of plaintiffs' claims against the City defendants as a matter of law, however, and is doing so in a manner that will not require relief against the State of New York, defendant Ambach's motion may be deemed granted.

duct, or other reasons which, when appealed to the Commissioner of Education, shall be held by him sufficient cause for such dismissal." [2]

### B. *The Pension Scheme*

In New York City, a teacher who retires from the public school system is eligible for a "retirement allowance" under the provisions of the New York City Teachers' Retirement System ("TRS"). See Administrative Code of the City of New York, Ch. 20, Title B, § B20–44.0. The retirement allowance consists of the accumulated deductions taken from the teacher's salary, which are placed in an annuity savings fund, plus a contribution from the City. Teachers who do not qualify for retirement, but who resign from the public school system after at least fifteen years of credited service, still have a "vested right" to receive a retirement allowance when they reach the age at which they would have been eligible to retire had they remained in service. § B20–44.2.[3] However, the teachers who are dismissed prior to retirement do not qualify under § B20–44.2 and can only withdraw the amount of their accumulated deductions in the annuity savings fund.

### C. *Plaintiffs' Claims*

Plaintiff Winston had been an elementary school teacher for twenty-one years, from 1959 to January 1981, at which time the Board of Education at Community School District 3 preferred charges against her pursuant to N.Y.Educ.Law § 2590–j(7)(b) (McKinney) for "neglect of duty," "incompetent and inefficient service," and "substantial cause that renders her unfit to perform properly her obligations to the service." These charges were based on allegations that on certain occasions during the period from September 30, 1980 to January 23, 1981, plaintiff Winston failed to plan and organize properly classroom activity and failed to maintain control of students in her class, and that she was absent a total of twelve days during the 1980–81 school year. Plaintiff Van Gorder was similarly charged by the Board of Education of the City School District of the City of New York with "incompetent and inefficient service," "conduct unbecoming his position and prejudicial to the good order, efficiency and discipline of the service," and "substantial cause that renders this employee unfit to properly perform his duties to the service," following twenty-four years of service as a high school teacher. These charges were based on allegations that at certain times during the period from September 1979 to June 1982, plaintiff Van Gorder used ineffective teaching methods, had poor classroom control, used class time unproductively, taught lessons in an inappropriate sequence, planned classwork poorly, and generally failed to provide

---

**2.** Plaintiffs contend that provisions of the Education Law that apply to school districts outside of the City of New York are also relevant since the New York courts have held that the enumeration of grounds for dismissal of tenured teachers are not exclusive and that other grounds recognized by the Commissioner of Education will also be upheld. *See Bott v. Board of Education, Deposit Central School District,* 41 N.Y.2d 265, 268–69, 392 N.Y.S.2d 274, 277, 360 N.E.2d 952, 954 (1977). These provisions include as additional grounds for teacher dismissal: immoral conduct, incompetency, conduct unbecoming a teacher, physical or mental disability, and neglect of duty. N.Y.Educ.Law §§ 1102, 2509, 3012(2), 3014(2) (McKinney). I do not pass on this argument since, for reasons indicated, I find it to be immaterial to the disposition of the instant motion.

**3.** Section B20–44.2 provides in relevant part:

*Vested retirement rights.*—a. (1) Except as provided in paragraph three of this subdivision a, any contributor who has been a member of the retirement system and has had fifteen or more years of accredited service, at least five years of which immediately precedes termination, who discontinues service in the schools or colleges of the city other than by death or retirement or dismissal and who does not withdraw his accumulated deductions shall have a vested right to receive a deferred retirement allowance on attaining the age at which he would first be eligible for retirement had he remained in service but in no case, except as otherwise provided in paragraph two of this subdivision, prior to the date he attains the age of sixty years. Such member shall be known as a discontinued member.

proper instruction to his pupils. Pending a hearing and determination on these charges, plaintiffs Winston and Van Gorder have been removed from their classroom posts and have been assigned to administrative duties.

Plaintiff Vernon was a special education teacher in the New York City school system for twenty-seven years, from February 1953 through September 1980. In May 1979, defendant Macchiarola, on behalf of the Board of Education of the City of New York, preferred charges against her for recklessly injuring a ten-year-old child in her special education class. Following a hearing demanded by Vernon, the hearing panel concluded that the Board of Education had failed to prove the charges against her. This ruling was appealed to defendant Ambach as Commissioner of Education of the State of New York, who, under the statute, can make an independent determination regardless of the hearing panel's decision. Pending this appeal, however, Vernon submitted her resignation and applied to the TRS for retirement benefits. She allegedly resigned to protect her pension rights since, under § B20–38.0(2), these rights are forfeited by dismissal prior to retirement, and she did not want to risk the possibility of an adverse determination by the Commissioner of Education.

Plaintiffs have challenged § B20–38.0(2) on the following constitutional grounds:

(1) By not providing dismissed teachers with an independent hearing to determine whether their pension benefits should be forfeited, the statute deprives plaintiffs of their procedural due process rights.

(2) The imposition of a forfeiture of pension rights for all dismissed teachers is arbitrary and irrational and thus deprives plaintiffs of their constitutionally protected interests in violation of their substantive due process rights.

(3) The forfeiture provision violates plaintiffs' equal protection rights by impermissibly discriminating (a) between those who exercise their rights to a hearing and those who resign prior to a hearing to avoid dismissal; and (b) between public school teachers outside New York City, who are not subject to the automatic forfeiture provision and City public school teachers, who automatically lose their pensions upon their dismissal.

(4) In denying pension benefits to those teachers who exercise their right to a hearing prior to dismissal and against whom an adverse determination is made, the provision unconstitutionally chills plaintiffs' procedural due process rights to a pre-dismissal hearing.

## II. *Plaintiffs' Invocation of Procedural Due Process To Protect Their Pension Rights*

Plaintiffs' first claim—that the denial of an independent hearing on the forfeiture of their pension deprives them of procedural due process—is premised on their assertion that they have a constitutionally cognizable right to their pension benefits. Because I find this premise to be erroneous, this claim is rejected.

The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

*Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 577, 92 S.Ct. at 2709, *quoted in Bishop v. Wood*, 426 U.S. 341, 344 n. 7, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). *See also Greene v. McGuire*, 683 F.2d 32, 34 (2d Cir.1982) (finding that convicted police officers automatically forfeited their property interests in their jobs under state law and thus were not entitled to a due process hearing on their petition for reinstatement). In the instant case, plaintiffs'

pension rights were created and defined by the TRS provisions as they appear in the Administrative Code. These provisions indicate that a right to a pension does not vest until all the stated conditions are met, including the teacher's retirement pursuant to §§ B20–41.0 & B20–44.2, or resignation pursuant to § B20–44.2. Moreover, the New York courts have held that dismissed public employees have no cognizable rights to a pension. *See Robbins v. Police Pension Fund,* 321 F.Supp. 93 (S.D.N.Y.1970) (police officer's pension rights do not vest where he failed to meet a statutory requirement that he be a member of the Police Department without termination or forfeiture of office at the time he applied for pension); *Matter of Eberle v. LaGuardia,* 285 N.Y. 247, 33 N.E.2d 692 (1941) (civil service employee's pension rights did not vest where employee applied for retirement before his dismissal but failed to fulfill all the statutory conditions for retirement).[4] Therefore, plaintiffs, who have failed to meet the statutory conditions for the vesting of their pension rights, cannot assert a property right derived from state law that is entitled to procedural due process protection.

Plaintiffs next argue that even if their claim to pension benefits does not rise to the level of a property right, it nonetheless warrants procedural due process protections. In support of their contention they advance the following theories:

(1) Plaintiffs' interest constitutes a "benefit" or "privilege" that cannot arbitrarily be denied. *See Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); *Flemming v. Nestor,* 363 U.S. 603, 610–11, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435 (1960);

(2) Property rights include the right to acquire property, *see Lynch v. Household Finance Corp.,* 405 U.S. 538, 544, 92 S.Ct. 1113, 1118, 31 L.Ed.2d 424 (1972), and this encompasses plaintiffs' expectation of the vesting of their pension right;

(3) Since the New York courts have referred to pension benefits as "compensation for services previously rendered," *Gordon v. Monaghan,* 309 N.Y. 336, 342, 130 N.E.2d 882, 885 (1955), plaintiffs presently enjoy a right to pension benefits that can only be deemed forfeited for just cause, and pursuant to a due process inquiry;

(4) The enactment of the Employees' Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1381, which strictly prohibits the forfeiture of vested pension benefits in the private sector, evidences a national recognition of pension rights as property interests deserving of more substantial protection in cases of pension forfeiture.

■ All of those theories would necessitate an independent inquiry into the nature and scope of the expectation created by the TRS, which I find to be inappropriate in

---

**4.** Plaintiffs contend, in spite of this authority, that their pension expectancies are property interests under New York law. In support of this contention, they cite Article 5, § 7 of the State Constitution, which provides that "membership in any pension or retirement system of the State or a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired." *See Birnbaum v. Teachers Retirement System,* 5 N.Y.2d 1, 176 N.Y.S.2d 984, 152 N.E.2d 241 (1958) (invalidating the use of new mortality tables to compute retirement benefits, where such computations had the effect of reducing the annuities of members of the earlier system). I find this argument to be misplaced.

The purpose of the amended section of the State Constitution was "to fix the right of the employee at the time he became a member of the system." *Id.,* 5 N.Y.2d at 9, 176 N.Y.S.2d at 990, 152 N.E.2d at 245. This purpose is not thwarted by the statutory scheme being challenged, since § B20–38.0 preceded both plaintiffs' entrance into the TRS and the enactment of the State constitutional provision. Moreover, the Appellate Division's First Department clearly stated in *Gorman v. City of New York,* 280 A.D. 39, 110 N.Y.S.2d 711 (1st Dept.1952), that the State Constitution "does not imply a restriction upon public authority to remove a member from a public position for valid cause, even though the right to a pension terminates with the removal." *Id.* at 44–45, 110 N.Y.S.2d 711 (upholding city amendment requiring thirty days' notice before retirement). As in *Gorman,* the City defendants may here condition the receipt of pension benefits on retirement in good standing, *see id.* at 44, 110 N.Y.S.2d 711, without infringing any property rights of the employees.

light of the Supreme Court's comments in *Bishop v. Wood, supra.* In *Bishop,* a policeman claimed that since a city ordinance classified him as a "permanent employee," he had a constitutional right to a hearing prior to his dismissal. The court held, however, that because the city ordinance creating this expectation had been interpreted by lower federal courts as affording no rights to continued employment, due process considerations were not invoked. 426 U.S. at 345–46, 96 S.Ct. at 2078. In contrast to the contentions of the dissenters, *see Id.* at 350–55, 96 S.Ct. at 2080–82 (Brennan, J. dissenting); *Id.* at 361–62, 96 S.Ct. at 2085 (Blackmun, J. dissenting), the majority did not recognize the propriety of an independent federal law inquiry into the existence of a property interest. The existence or non-existence of a property interest was for the state to decide.[5] It follows that in this case, where New York courts have held that a public employee's interest in future pension benefits—be they characterized as property rights, privileges or mere expectancies—does not invoke due process rights, this Court cannot, consistently with *Bishop,* reinterpret the nature of this interest. *See also Greene v. McGuire, supra,* (evaluating property interests on basis of state court determination).[6]

Even were I to be inclined to inquire into the reasonableness with which the state and city defendants have created and conditioned the plaintiffs' pension interests, I would not deem this case to be the appropriate occasion for the invocation of due process protections. Contrary to the plaintiffs' assertions, I do not find the defendants' statutory conditions precedent to the vesting of pension benefits to be arbitrary or unreasonable. The statutory requirement is no less principled than the determination of the minimum number of years of employment required for vesting. Indeed, it was the defendants' determination to reduce the number of years required for vesting that precipitated plaintiffs' dilemma. Given the discretion that the State and City have in creating the pension privilege, their refusal to accord property right/due process status to this privilege does not appear unreasonable.

To the plaintiffs' claim that ERISA alters the nature of the pension rights, the simple answer is that ERISA's provisions do not govern public pension plans. No useful purpose would be served by speculating whether, in light of ERISA's enactment, states will expand or curtail the scope of pension rights.

For the foregoing reasons, I find that plaintiffs cannot successfully challenge the pension forfeiture provision on the ground that they have been deprived of procedural due process.

### III. *Plaintiffs' Substantive Due Process Rights*

Plaintiffs have challenged the effect of the Administrative Code provisions upon pension rights as being irrational and thus violative of their substantive due process

---

5. Although the Supreme Court remains divided over whether a state can condition its grant of a property interest solely by procedural limitations accompanying the grant of that interest, *see Bishop v. Wood, supra,* 426 U.S. at 350–55, 96 S.Ct. at 2080–82 (Brennan J. dissenting) & 355–61 (White, J. dissenting); *Arnette v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); G. Gunther, Constitutional Law, at 654–55, it is clear from *Bishop* and *Arnette* that the Court will defer to state rulings defining the scope of a state-created property right. As indicated *supra* in the text, the scope of a teacher's right to a pension has been defined not only by the procedural limitations contained in the Administrative Code, but also by state court authority. Therefore, in the present case, there

can be no doubt that *Bishop* controls and that no property interest has been created.

6. In so holding, the decision does not preclude New York courts from reexamining the scope of the employees' entitlements under state-sponsored pension plans, on the basis of changing public attitudes. *See, e.g., Uricoli v. The Board of Trustees, Police and Fireman's Retirement System,* 91 N.J. 62, 449 A.2d 1267 (1982) (finding that state forfeiture statute did not mandate automatic forfeiture of pensions in every instance of misconduct, in part because of the "national public policy of secure retirement income"). Pending such developments, however, this Court is bound by the law of New York as it now exists.

rights. The following reasons have been advanced to support this claim: (1) the New York City Administrative Code deprives dismissed employees of their pension rights without an independent inquiry into the culpability of their conduct; (2) the Code creates a conclusive presumption that all dismissed teachers have been guilty of misconduct or have not rendered long and faithful service; (3) the Code's forfeiture provision punishes teachers for activity subsequent to—and therefore unrelated to—the satisfactory services performed incident to their pension rights; (4) the Code punishes the exercise of constitutional rights.

■ I note at the outset that plaintiffs lack standing to assert that the Code is unconstitutional for failing to require an inquiry into their culpability or for creating a presumption of culpability. While it may be true that under the Code teachers can be deprived of pension rights as a result of dismissals that were not prompted by culpable conduct—such as dismissals for mental or physical incapacity,[7]—the plaintiffs now before the Court are all the subjects of dismissal proceedings on charges that may arguably be regarded as culpable conduct. To permit the plaintiffs to assert the rights of those whose conduct is not even arguably culpable would violate "the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). *See also McGowan v. Maryland,* 366 U.S. 420, 429–30, 81 S.Ct. 1101, 1107, 6 L.Ed.2d 393 (1961) (constitutional rights are personal and may not be asserted vicariously).

■ The standing barrier aside, these two reasons, together with the third reason stated above—challenging the relevance of subsequent misconduct to pension entitlement—all rest on the misplaced premise that plaintiffs have a constitutionally cognizable property interest in their pension benefits. As apparently conceded in plaintiffs' brief, the Due Process Clause's rational basis test is only invoked where a protected liberty or property interest is implicated by a legislative classification or scheme. *See Harrah Independent School District v. Martin,* 440 U.S. 194, 197–98, 99 S.Ct. 1062, 1064, 59 L.Ed.2d 248 (1979); *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 639–40, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974). For the reasons set forth in the preceding section, *supra,* I have found that no such interests are implicated in this case.[8] Therefore, the Administrative Code provisions cannot be challenged for any of these reasons as a violation of substantive due process rights.

Plaintiffs' fourth reason—that the Code provisions are irrational for punishing the exercise of their constitutional rights to a hearing—cannot be disposed of as easily. Unlike the other asserted grounds, this claim invokes substantive due process considerations based upon plaintiffs' right to a hearing rather than upon their pension rights. As so framed, however, plaintiffs' claim becomes identical to the one discussed *infra* in Section V—namely, that their procedural due process rights are being chilled by virtue of the threatened deprivation of their pension rights. I will therefore discuss the rationality of the challenged Code provisions in that Section.

## IV. *Plaintiffs' Equal Protection Claims*

Plaintiffs have framed two arguments in support of their equal protection claims: (1)

---

**7.** Defendants argue, based on citations to decisions of the Department of Education, that teachers have in fact been subjected to dismissal and forfeiture of pension benefits only in instances of highly culpable conduct. Plaintiffs counter that the absence of dismissal cases based on charges of non-culpable conduct—such as mental or physical disability—is not

conclusive evidence that teachers are not *subject* to dismissal on these lesser grounds.

**8.** Even were a rational basis test to be applied here, the pension provisions would be sustained for the reasons set forth *supra* Section II. The provisions are reasonably aimed at limiting pension benefits to deserving teachers, which is a valid state purpose.

the defendants have unlawfully discriminated between New York City teachers, whose pension benefits are automatically forfeited upon dismissal, and New York State teachers outside the City, whose benefits are not conditioned on resignation or retirement in good standing; (2) the defendants have unlawfully discriminated between those choosing to resign without a hearing and those who exercise their right to a hearing. While one of these claims may merit constitutional scrutiny in other contexts, I find that neither is appropriately redressable under the Equal Protection Clause of the Fourteenth Amendment.

■ As to plaintiffs' first claim, there is simply no evidence to support the finding of an invidious or irrational classification. The retirement systems for State and City public school teachers differ in many respects besides the pension forfeiture provisions. As the defendants point out, the City retirement system is larger and more diverse than elsewhere in the State, and thus operates under different constraints. Given these circumstances, it would be incorrect to describe the City and State teachers as forming two similar classes that are being treated unequally. The State has simply pursued the permissible goal of providing its localities with different benefits according to their different needs. *See San Antonio School District v. Rodriguez*, 411 U.S. 1, 54 n. 110, 93 S.Ct. 1278, 1307, 36 L.Ed.2d 16 (1973).

■ Plaintiffs' second claim, although cast in terms of equal protection analysis, is better adjudicated by addressing the particular right upon which the allegedly unequal classification is being based—the right to a hearing before dismissal. Classifications are not unconstitutional per se under the equal protection clause. In this particular case, the merits of plaintiffs' equal protection claim will turn on this Court's evaluation of the procedural due process right at stake and the extent to which it is being impaired, which is the focus of Section V, *infra*. This evaluation will in turn determine the level of scrutiny with which this Court will review the challenged provision of the Administrative Code. No useful purpose will be served by an equal protection analysis. *See* Westen, The Empty Idea of Equality, 95 Harv.L. Rev. 537, 560–64 (1982) (criticizing the employment of the equal protection clause in right-to-travel cases), *cited with approval* in Greenawalt, How Empty Is the Idea of Equality? 83 Col.L.Rev. 1167, 1182 (1983).[9] Whatever redress plaintiffs are entitled to under the equal protection clause[10] will necessarily be subsumed under the procedural due process claim discussed in the section that follows.

### V. *The Chilling of Plaintiffs' Procedural Due Process Rights To A Pre-Dismissal Hearing*

As a result of the Administrative Code's provisions relating to dismissal and pension rights, New York City teachers such as plaintiffs face the following dilemma: if they exercise their rights to a hearing prior to dismissal and do not prevail, they forfeit pension benefits that would vest if they chose instead to resign.

---

**9.** Essentially, Professor Westen contends that equality is an empty principle, in that the merits of a plaintiff's equal protection claim ultimately depend, not on his classification according to a certain characteristic, but rather on the strength of the right he has been deprived of by virtue of the classification. Professor Greenawalt contends that the principle of equality does have an independent force in many areas of law, but agrees with Professor Westen that in the right-to-travel cases the Equal Protection Clause adds nothing to the merits of the plaintiff's claims.

**10.** The City defendants have argued that plaintiffs have no cognizable claim under the Equal Protection Clause because there is no classifica-

tion to begin with. Since I have chosen not to address plaintiffs' equal protection claims, I need not address this argument. I note in passing, however, that the contention itself lends further support to the viewpoint expressed by the Court that plaintiffs' claim is ultimately rooted in their rights to procedural due process and pension benefits, and not in equal protection. A finding of a classification subject to equal protection analysis would be premised on a prior determination that an important right is present, the exercise of which has formed the basis for distinguishing between groups of individuals.

That the chilling of procedural due process rights has constitutional dimension was first indicated in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), where the Supreme Court invalidated on equal protection and due process grounds a state statute that imposed penalties of fines and imprisonment for the violation of laws establishing the maximum rates to be charged by railroad companies. The court reasoned that "[w]hen the penalties [are] ... so enormous ... as to intimidate [a party] from resorting to the courts to test the validity of the legislation, the result is the same as that the law in terms prohibited the company from seeking judicial construction of laws which deeply affect its rights." *Id.* at 147, 28 S.Ct. at 448. *See also Brown and Williamson Tobacco v. Engman*, 527 F.2d 1115 (2d Cir.1975) (reaffirming the "right to contest the *validity* of a legislative or administrative order affecting [a party's] affairs without necessarily having to face ruinous penalties if the suit is lost," *Id.* at 1119), *cert. denied*, 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837.

Similar due process concerns have been expressed to protect a defendant's privilege against self-incrimination. In *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), the Supreme Court held that when a policeman was compelled to testify by the threat that otherwise he would be removed from office, the testimony that he gave could not be used against him in a subsequent criminal prosecution. The reasoning in *Garrity* was subsequently employed to overturn the dismissal of a policeman because he failed to relinquish his privilege against self-incrimination. *See Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968). *See also Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (invalidating on Fifth Amendment grounds, the disbarment of a lawyer solely for his refusal to testify at a disciplinary proceeding).

Although these cases evidence the Supreme Court's continued concern with chilling the exercise of constitutional rights, recent Supreme Court cases appear to mark a trend toward limiting the circumstances in which statutes will be invalidated on these grounds. This is particularly evident in cases adjudicating the procedural rights of criminal defendants. In *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Supreme Court upheld the guilty plea of a defendant despite his contention that the plea was prompted by fear of the death penalty should he exercise his right to trial. In so holding, the Court limited its previous decision in *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), in which it invalidated, on due process grounds, a provision of the federal kidnapping law that permitted the death penalty only in cases where the defendant had elected a jury trial. According to the Court in *Brady*, "*Jackson* ruled neither that all pleas of guilty encouraged by the fear of a possible death sentence are involuntary pleas nor that such encouraged pleas are invalid whether voluntary or not." *Brady*, *supra*, 397 U.S. at 747, 90 S.Ct. at 1468. Rather, the holding in *Jackson* was said to result from the finding that "the legitimate goal of limiting the death penalty to cases in which a jury recommends it could be achieved without penalizing those defendants who plead not guilty and elect a jury trial," so that "the death penalty provision 'needlessly penalize[d] the assertion of a constitutional right.'" *Id.* at 746, 90 S.Ct. at 1468, *quoting Jackson*, *supra*, 390 U.S. at 583, 88 S.Ct. at 1217. A similar reading of *Jackson* was followed in *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), where the Court found that the imposition of a harsher sentence by a jury on retrial after a defendant's successful appeal of a criminal conviction did not impermissibly chill the right to appeal. *See Id.* at 30 & n. 17, 93 S.Ct. at 1984. *Compare North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (because due process prohibits vindictiveness as part of sentencing, imposition of harsher sentence by a *judge* on retrial is impermissible unless the new sentence is based on objective information concerning defendant's conduct ob-

tained after the original sentencing proceeding).

While *Brady, Chaffin* and other cases subsequent to *Jackson* have thus limited the reach of the Due Process Clause to invalidate statutory schemes that chill the exercise of constitutional rights, these cases have not articulated clear standards that can be universally applied. In *Chaffin,* the Court held that the challenged statute was valid because the alleged chilling was an incidental consequence of the achievement of legitimate governmental purposes. 412 U.S. at 32–33, 93 S.Ct. at 1986. The opinion was also based, however, on the Court's determination that the likelihood of the defendant being adversely affected by the exercise of his right was too remote to be deemed an unconstitutional chilling. *Id.* at 33–35, 93 S.Ct. at 1986. Overall it appears that, at least in the area of criminal procedure, the Court is prepared to balance the importance and need for the challenged statute, against the extent to which it chills the exercise of the party's constitutional rights. *See also Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (due process clause not violated when a state prosecutor carried out a threat made during plea negotiations to have the accused reindicted on more serious charge for which he could have been originally prosecuted).

In the present case the chilling effect on plaintiffs' procedural due process rights is incidental in the sense that the statutory scheme being challenged was designed not to penalize the exercise of procedural due process rights, but to further the legitimate governmental purpose of limiting pension rights to those teachers who were in good standing when their pension rights accrued. The extent of this chilling is substantial, however, in that teachers in plaintiffs' position must choose between the certain loss of their employment by resignation with the retention of pension rights and the risk of forfeiting those pension rights should they try to retain their jobs by insisting upon a hearing.[11] Considering the two relevant factors here—the necessity of the statutory scheme to accomplish a legitimate governmental objective and its chilling effect on the exercise of plaintiffs' rights—a more precise method for weighing the significance of these factors than that provided in the above cited cases needs be sought. The "right-to-travel" cases furnish useful guides in this quest.

As in the present case, the plaintiffs in right-to-travel cases argued that the exercise of their constitutionally protected right was being chilled through the threatened deprivation of a benefit to which they ordinarily could not claim a constitutionally vouchsafed entitlement. The argument was successfully used to challenge durational residence requirements that prevented the plaintiffs from receiving various state-provided benefits. *See Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (indigent medical care); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (voter registration); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (welfare benefits).

In all of these cases, the invalidation of the residency requirement was premised on the determination that the state had failed to demonstrate a compelling state interest to justify the requirement. Application of the compelling state interest test was prompted by an inquiry into "the extent to which the residence requirement served to *penalize* the exercise of the right to travel." *Memorial Hospital, supra,* 415 U.S. at 257, 94 S.Ct. at 1081 (emphasis in original).[12]

---

**11.** The City defendants dispute the assertion that the chilling effect is substantial by citing instances where teachers have demanded a hearing rather than resign. City Defendants' Brief pp. 24–26. Of course, there may still be numerous unreported instances in which teachers have chosen *not* to exercise their right to a hearing because of their desire to secure pension benefits. In any event, for the reasons set forth in the text that follows, and *infra* note 12, I need not address this claim.

**12.** *Dunn, supra,* 405 U.S. at 339–40, 92 S.Ct. at 1002, and *Memorial, supra,* 415 U.S. at 258, 94 S.Ct. at 1082, rejected attempts to distinguish

■ In determining whether the termination of pension benefits in the present suit should be deemed a "penalty," this Court is mindful of the fact that the Supreme Court's application of the compelling state interest test has been limited to residency requirements used to condition the receipt of "basic necessities of life." *Memorial Hospital, supra,* 415 U.S. at 259, 94 S.Ct. at 1082. *Compare Vlandis v. Kline,* 412 U.S. 441, 452–53 n. 9, 93 S.Ct. 2230, 2236, 37 L.Ed.2d 63 (1973) (declining to overrule *Starns v. Malkerson,* 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), which upheld one year residency requirement as a condition to lower tuition at state institutions of higher education). While the plaintiffs' need for pension benefits may not be quite as compelling as an indigent's need for welfare or medical benefits, I find that it nevertheless qualifies as a "basic necessity," the deprivation of which should be deemed a "penalty." Not only is the forfeiture of pension rights here irretrievable, as in the case of welfare and medical benefits, but it is permanent in that the plaintiffs will forever be deprived of this means of support. *Compare Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), (upholding residency requirement for divorce application since plaintiff's rights are postponed, rather than irretrievably forfeited). For these reasons, and in the light of the overall concerns expressed above about chilling the exercise of procedural due process rights, I believe the application of the compelling state interest test to be warranted here.

■ Although the Administrative Code provisions at issue may be said to further legitimate state goals, I find that neither the goals nor the methods designed for their implementation are calibrated with sufficient precision to satisfy the compelling state interest test. Certainly, the State's efforts to remove incompetent teachers from their jobs is commendable, but this goal would be achieved whether or not dismissed teachers forfeited their pensions. As to the State's goal of limiting pensions to those who deserve it, I find that the manner employed to achieve that goal belies any assertion that the interest is compelling. Putting aside for the moment plaintiffs' claim that deserving teachers may be included among those who forfeit their pensions, *see supra* Section IV, it is beyond dispute that many undeserving teachers are receiving pensions simply because they have retired or resigned either before dismissal proceedings are concluded or before the State discovers their incompetency. Under such circumstances, the City defendants can hardly claim that their interest in limiting pension benefits to deserving teachers is compelling. In the final analysis, the City defendants are putting a price on a procedural due process right, the exercise of which must be free and unfettered. They have no right to do so. *See North Carolina v. Pearce, supra,* 395 U.S. at 724, 89 S.Ct. at 2080 (1968).

■ Admittedly, the present statutory scheme is an efficient means of attempting to attain the stated goals. But administrative efficiency will not suffice to satisfy the compelling state interest test. *See Memorial Hospital, supra,* 415 U.S. at 263, 94 S.Ct. at 1084; *Shapiro, supra,* 394 U.S. at 634, 638, 89 S.Ct. at 1331, 1333. In the absence of a compelling interest, the State must devise a statutory scheme that either acceptably minimizes or eliminates the chilling effect on the plaintiffs' exercise of their rights. Since, in this case, I find that the plaintiffs are being penalized by the forfeiture of their pensions for exercising their procedural due process rights without evidence of a compelling state interest to justify that penalty, the challenged statutory scheme must be declared invalid.[13]

*Shapiro* where plaintiffs failed to show additionally that the right to travel had actually been deterred. Therefore, I need not address the City defendants' contention that teachers have not actually been deterred from exercising their procedural due process rights. *See supra* note 10.

**13.** In so holding, I do not depart from the principle expressed in the criminal procedure cases that the withdrawal of a benefit as a consequence of the exercise of a procedural due pro-

## VI. Conclusion

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be rendered where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Applying this standard to the present case, I find that the plaintiffs are entitled to summary judgment. The City Defendants are hereby enjoined from implementing § B20.38.0 of the New York City Administrative Code, insofar as it would deprive plaintiffs of retirement benefits to which they would otherwise be entitled. Furthermore, the City defendants are ordered to reinstate plaintiff Vernon, so that she may have an opportunity to exercise her right to a pre-termination hearing.

SO ORDERED.

cess right constitutes an impermissible chilling only where the withdrawal is "unnecessary and therefore excessive." *Jackson, supra,* 390 U.S. at 582, 88 S.Ct. at 1216. *See Chaffin, supra; Bordenkircher, supra; Brady, supra;* text at pp. 15–17. The requirement of necessity parallels the compelling state interest test utilized here and in the right to travel cases. While in the latter cases, application of the heightened level of scrutiny followed a determination that the statute imposes a penalty, in the *Jackson*-line of cases, the Supreme Court inquired into whether the chilling was direct or incidental. In both lines of cases, the result was predicated upon the Court's evaluation of the particular benefit, the receipt of which was conditioned on the forfeiture of a constitutional right. In my view, the benefit at issue here—plaintiffs' pension rights—is more in the nature of an expectancy than, e.g., a reduced sentence for pleading guilty. *See Bordenkircher, supra; Brady, supra.* It is for this reason that I have found an unconstitutional chilling, in contrast to *Bordenkircher* and *Brady.*

Admittedly, it is harder to distinguish *Chaffin* on this basis. A defendant who appeals his conviction arguably acts with some expectation that he will not receive a more severe sentence upon a new trial. His more immediate expectation, however, is that if his appeal has merit, he will be entitled to a new trial. The granting of a new trial, regardless of the outcome, could hardly be deemed a penalty.

Moreover, the *Chaffin* opinion was based in part on the majority's finding that the likelihood of the defendant being penalized was too remote to be deemed a chilling of his constitutional rights. According to Justice Powell,

the likelihood of actually receiving a harsher sentence is quite remote at the time a convicted defendant begins to weigh the question whether he will appeal. Several contingencies must coalesce. First, his appeal must succeed. Second, it must result in an order remanding the case for retrial rather than dismissing outright. Third, the prosecutor must again make the decision to prosecute and the accused must again select trial by jury rather than securing a bench trial or negotiating a plea. Finally, the jury must again convict and then ultimately the jury or the judge must arrive at a harsher sentence in circumstances devoid of a genuine likelihood of vindictiveness.

*Chaffin, supra,* 412 U.S. at 33–34, 93 S.Ct. at 1986.

In contrast, only one contingency need be met before plaintiffs' exercise of their constitutional rights is penalized: their failure to prevail at their hearing. This will automatically subject plaintiffs to dismissal and the resultant loss of their pension benefits. Under these circumstances, a more sensitive inquiry into the existence of a penalty and its chilling effect is demanded.