Leonard LEGGIO, Plaintiff,

v.

Robert J. McGUIRE, individually and as Police Commissioner of the City of New York; Arnold N. Kriss, individually, and as Deputy Police Commissioner—Trials; John Guido, individually, and as Chief of Inspectional Services; and the New York City Police Department, Defendants.

No. 81 Civ. 8113(MEL).

United States District Court,
S.D. New York.

Dec. 28, 1982.

Schofield & Dienst, New York City, for plaintiff; Richard A. Dienst, New York City, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City, for defendants; Gregg M. Mashberg, Bradley S. Tupi, New York City, of counsel.

LASKER, District Judge.

This action arises from Leonard Leggio's dismissal from his position as a police officer with the New York City Police Department ("the Department"). Leggio, who had been a police officer since 1970, was charged in Police Department disciplinary proceedings with stealing a $50.00 money order from a criminal suspect.

Pursuant to the Civil Service Law of the State of New York and the Administrative Code of the City of New York, a disciplinary hearing was held on the charges before a Deputy Police Commissioner, Arnold N. Kriss. Kriss found Leggio guilty of the charges and recommended to the Police Commissioner, Robert J. McGuire, that Leggio be dismissed. The recommendation was accepted and Leggio was dismissed on September 15, 1981.

Leggio alleges that his dismissal deprived him of property and liberty interests without according him due process of law. He contends that Deputy Police Commissioner Kriss and Commissioner McGuire were biased and partial adjudicators because (1) they had a pecuniary interest in dismissing police officers and (2) they served at the pleasure of elected officials, and hence were subjected to political pressures to "give the appearance of eliminating 'bad cops' from the force . . . [in order] to promote a greater degree of public confidence in the Police Department." (Plaintiff's Memorandum at 21).

Leggio has also filed a petition under Article 78 of the CPLR in the New York County Supreme Court (which has been transferred to the Appellate Division, First Department) alleging that the procedures utilized by the Police Department violated his due process rights under the New York State Constitution, that the Commissioner's findings were not supported by substantial evidence and that the penalty imposed was excessive.

Both parties move pursuant to Fed.R. Civ.Pr. 56 for summary judgment. None of the material facts are in dispute.

\* \* \* \* \* \*

■ Leggio contends that the Department stands to gain from fines imposed on officers, from the elimination of the pension benefits of a dismissed officer, and from the savings created by replacing experienced, higher salary officers with new recruits.

According to the Department's Director of Audit and Accounts, the Department's expense budget for fiscal year 1982 was approximately $795 million. Fines imposed on officers during that period totalled $11,-202.09. (Affidavit of Alan J. Graham, ¶ 4). Moreover, Deputy Commissioner Kriss and Commissioner McGuire have no personal pecuniary interest in the solvency of the Police Pension Fund because, not having served as police officers themselves, their pensions are not payable out of the Police Pension Fund. Finally, although the record does not reflect the savings accrued to the Department through the dismissal of police officers, even according to Leggio's contentions, only 165 officers were dismissed from the Department between 1978 and 1981 (Plaintiff's Memorandum at 20) and the Court can take judicial notice of the fact that the elimination of pension benefits of 165 officers in a four-year period would have very little effect on an annual budget of over half a billion dollars.

In *Marshall v. Jerrico*, 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980), a case in which the fines collected by the agency in question amounted to less than one percent of the agency's annual budget, the Supreme Court stated that the biasing influence alleged was "too remote and insubstantial to violate constitutional constraints." 446 U.S. at 243–44, 100 S.Ct. at 1613–14. The possibility of financial considerations creating a bias under the circumstances in dispute here is at least equally remote. *See*

*also Dugan v. Ohio,* 277 U.S. 61, 65, 48 S.Ct. 439, 440, 72 L.Ed. 784 (1928) (The mayor's "relation . . . to the fund contributed to by his fines as judge, or to the executive policy of the city, is remote.") We conclude that the pecuniary interests of the Department are so remote that no genuine issue is raised that their existence affected the proceedings against Leggio or deprived him of due process.

■ In support of his argument that the Commissioners are subject to political pressures which deprive the proceedings of due process, Leggio points to the percentages of disciplinary actions that result in pleas or findings of guilt, and to the record in his own case, which, he contends, clearly vindicates him and demonstrates bias. He also argues that the safeguards created by the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.,* with regard to administrative law judges, are in some way applicable to Police Commissioners.

As an initial matter, we know of no authority for the proposition that the standards established by the Administrative Procedure Act are required by the due process clause. At the most, the Act merely provides one means of insulating adjudicators from political pressures.

The factors relevant to a determination of whether state processes meet constitutional standards are set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976):

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

Leggio, of course, had a substantial interest in retaining his position, and it may be assumed that procedures for insulating judges, such as those utilized under the Administrative Procedure Act, provide valuable safeguards against the risk of bias. However, in view of the substantial safeguards already provided in the Department's disciplinary process, "the risk of an erroneous deprivation . . . through the procedures used," *id.,* is quite low.

Among the protections granted Leggio were a public trial at which he was represented by counsel and afforded the right to testify, present witnesses and cross-examine the witnesses against him; a written statement of the decision; an opportunity to submit a written challenge to the Deputy Commissioner's decision prior to the forwarding of the decision to the Commissioner; a stenographic recording of the trial which was made available to the Commissioner to consider along with the recommendations of the Deputy Commissioner; and, perhaps most important, the right to judicial review of the decision in an Article 78 proceeding in state court. Moreover, in the Article 78 proceeding, Leggio may raise not only questions as to procedural errors and due process, but also questions as to whether the finding of guilt was supported by substantial evidence and whether the penalty was disproportionate to the offense.

Furthermore, the conviction statistics relied on by Leggio do not support his position. It is true that the counsel for the New York City Patrolmen's Benevolent Association states that his office represents ninety percent of the police officers who are brought up on disciplinary charges, and that, of those ninety percent, eighty percent of the cases conclude in a finding of guilt or a negotiated plea of guilty. (Affidavit of Richard Hartman, ¶¶ 4, 10).[1]

Nevertheless, such statistics do not support Leggio because they do not differ greatly from conviction and acquittal statistics of criminal courts in which due process is clearly afforded the accused. Moreover,

---

1. In addition, Leggio states in his 3(g) statement that seventy-five percent of the disciplinary cases which actually go to trial result in convictions. (Plaintiff's Rule 3(g) Statement, ¶ 39).

to form a conclusion as to the meaning of the figures would require much more evidence; in particular, evidence of how cases are selected and how much evidence is collected prior to the institution of proceedings—in other words how "solid" are the cases brought to trial.

The record of Leggio's disciplinary proceedings also appears to support the Department, not Leggio. The hearing took two days. We have reviewed much of the transcript, and find nothing in the questions or comments of Deputy Commissioner Kriss which appears, at least from the printed page, to indicate bias or hostility towards Leggio. Moreover, Kriss filed a written opinion of nineteen pages which carefully lays out the facts, the items in support of Leggio, and the reasons for the decision against him. The opinion in no way suggests a hastily-written justification of a predetermined result.

Accordingly, we conclude that the disciplinary proceedings which resulted in Leggio's dismissal from the Police Department were conducted in accordance with the requirements of due process. Although the penalty Leggio has suffered may be considered harsh in view of his record and achievements in the Department, that issue is not before this Court. In any event, Leggio is pursuing his right of court review of both the decision and the penalty in the Article 78 proceeding.

The defendants' motion for summary judgment is granted. The plaintiff's motion for summary judgment is denied.

It is so ordered.