Helen WINSTON, Harry Van Gorder and Natalie Vernon, Plaintiffs-Appellees-Cross-Appellants,

v.

The CITY OF NEW YORK, New York City Teachers, Retirement System, Board of Education of the City School District of the City of New York, Frank J. Macchiarola, as Chancellor of the City School District of the City of New York, Board of Education of Community School District 3, Gordon M. Ambach, as Commissioner of the New York State Department of Education, Defendants,

The City of New York, New York City Teachers' Retirement System, Board of Education of the City School District of the City of New York, Frank J. Macchiarola, as Chancellor of the City School District of the City of New York, Board of Education of Community School District 3, Defendants-Appellants-Cross-Appellees.

Nos. 132, 253, Dockets 84–7308, 84–7382.

United States Court of Appeals, Second Circuit.

Argued Sept. 19, 1984.

Decided April 5, 1985.

Van Graafeiland, Circuit Judge, filed dissenting opinion.

J. Christopher Meagher, New York City (Stephen Mendelsohn, James R. Sandner, New York City, of counsel), for plaintiffs-appellees-cross-appellants.

Edward F.X. Hart, New York City (Larry A. Sonnenshein, Antonia Levine, Frederick A.O. Schwarz, Jr., New York City, of counsel), for defendants-appellants-cross-appellees.

Before VAN GRAAFEILAND and CARDAMONE, Circuit Judges and MacMAHON, District Judge.*

CARDAMONE, Circuit Judge:

The main issue on this appeal is whether New York City public school teachers have a property interest in their pension rights protected under the due process clause of the 14th Amendment to the United States Constitution. Plaintiffs challenge a provision of the New York City Administrative Code, which provides that public school teachers dismissed for cause automatically forfeit their right to City-funded retirement benefits. A second issue is whether this

* Honorable Lloyd F. MacMahon, United States District Judge for the Southern District of New York, sitting by designation.

threat of pension loss unconstitutionally chills the teachers' rights to a hearing over the reasons for their dismissal. Under the present statutory scheme, teachers can either put their pensions at risk in an attempt to keep their jobs and vindicate their reputations, or they can resign and be presumed guilty of the charges made against them.

## I

Plaintiffs, two present teachers and one former teacher in the New York City school system, sought declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 to invalidate Section B20–38.0(2) of the New York City Administrative Code insofar as it deprives a city teacher dismissed from service of city-funded pension benefits and the right to collect a retirement allowance. The United States District Court for the Eastern District of New York (Glasser, J.) granted summary judgment in plaintiffs' favor and enjoined the City defendants from implementing § B20–38.0(2) on the grounds that the statute unconstitutionally chilled plaintiffs' rights to a hearing over loss of their employment. The court directed the City to reinstate plaintiff Vernon who had resigned, in order to afford her a predetermination hearing. 580 F.Supp. 1470 (E.D.N.Y.1984). But the district court judge rejected the teachers' argument that they have a property interest in their pensions prior to retirement and are therefore being deprived of property without due process of law. He also dismissed their equal protection claims, dismissing one on the merits and finding the second claim better addressed in the analysis of whether plaintiffs' rights to a predismissal hearing are "chilled" by the Code provision. City defendants appeal, and plaintiffs cross-appeal from the trial court's

rejection of the several other constitutional grounds upon which relief was sought.

We agree with the holding that the forfeiture provision in the Code unconstitutionally chills the exercise of teachers' due process rights to a predismissal hearing. We further conclude that under New York State's Constitution teachers have a property interest in their contractual right to a pension upon fulfilling the statutory conditions. This property interest, derived from the State Constitution, is protected by the due process clause of the 14th Amendment. Here, the forfeiture provision violates the teachers' due process rights because it fails to provide *for a separate determination* of whether a dismissed teacher has engaged in misconduct warranting pension forfeiture.

Tenured public school teachers in New York cannot be dismissed except for cause following a hearing under New York Education Law § 3020–a. Under the challenged provision, section B20–38.0(2), the City repays a dismissed teacher's own contributions to the Teacher's Retirement System,[1] but the teacher forfeits the contributions made by the City and School Board. Although a teacher may resign while under charges and still receive pension benefits, he is subject to a presumption of guilt that is used to deprive him of licensure and re-employment rights. The grounds for charges against tenured teachers that, if sustained, may lead to dismissal are very broad. The City dismisses some for serious misconduct, such as sexual molestation, but it dismisses many for reasons that would seem not to involve misconduct, such as inefficiency or inability to maintain discipline. The charges against the plaintiffs in this case are typical of the charges brought.

---

**1.** Section B20–38.0 provides in pertinent part:
*Termination of membership; resignation, transfer or dismissal* —Withdrawals from the retirement association shall be by resignation, by transfer, or by dismissal.

....

2. Should a contributor be dismissed from the position by virtue of which he is a contributor under the provisions of this title, his

membership in the retirement association shall cease and there shall be paid him forthwith:

a. Out of the annuity savings fund the full amount of the accumulated deductions standing to the credit of his individual account. New York City Administrative Code ch. 20, title B, § B20–38.0.

The school board charged plaintiff Helen Winston, a second grade teacher for 23 years, with incompetency and inefficiency based on allegations that she failed to plan and organize classroom activity properly, failed to maintain control of students in her class, and was absent for a total of 12 days during the school year. When plaintiffs moved for summary judgment, she was awaiting a decision by a section 3020-a hearing panel. The school board similarly charged plaintiff Harry Van Gorder, a high school biology teacher for 25 years, with incompetency and inefficiency based on allegations that he used ineffective teaching methods, had poor classroom control, used class time unproductively, taught lessons in an inappropriate sequence, planned class time poorly, and generally failed to provide proper instruction to his students. At the time of the summary judgment motion, Van Gorder was also awaiting a decision. Finally, the school board charged plaintiff Natalie Vernon, a special education teacher for 27 years, with recklessly injuring a student in her class. After a hearing, the panel found her innocent. The defendant Board of Education appealed the decision to the State Commissioner of Education, who, under the statute, can make an independent determination of just cause for discharge. Before the Commissioner heard the appeal, plaintiff Vernon submitted her resignation while protesting her innocence. The New York State Unemployment Board later found that she had resigned to protect her pension rights from the vicissitudes of litigation. Winston, Van Gorder and Vernon each have a present value of approximately $150,000 in pension reserves subject to forfeiture.

## II

The automatic penalty of section B20–38.0(2) places an unconstitutional burden on a teacher's right to a hearing. Even assuming that the teachers have no property interest in their pension rights, the forfeiture provision chills the teachers' procedural due process right to a hearing over the reasons for their dismissal. As tenured public school teachers, plaintiffs have constitutionally protected property interests in their continued employment and in their right to a predismissal hearing under Education Law § 3020. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Clearly, parties have the "right to contest the *validity* of a legislative or administrative order affecting [their] affairs without necessarily having to face ruinous penalties if the suit is lost." *See Brown & Williamson Tobacco Corp. v. Engman*, 527 F.2d 1115, 1119 (2d Cir.1975), *cert. denied*, 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976).

The City relies heavily on *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), in arguing that the choice that teachers must make between resigning to keep their pensions and jeopardizing those pensions by defending against the charges is not an unconstitutional burden on a fundamental right. In *Brady* the Supreme Court upheld a defendant's guilty plea despite his contention that his plea was prompted by his fear of receiving the death penalty should he exercise his right to trial by jury. In so holding, the Court limited its previous decision in *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), in which it had invalidated a provision of the federal kidnapping law that permitted the death penalty only in cases where the defendant had elected a jury trial. The Court emphasized in *Brady* that it had not held in *Jackson* that all pleas of guilty encouraged by the fear of a possible death sentence were involuntary or that such pleas were invalid whether involuntary or not. *Brady*, 397 U.S. at 747, 90 S.Ct. at 1468. The *Brady* court explained that the holding in *Jackson* resulted instead from the finding that "the legitimate goal of limiting the death penalty to cases in which a jury recommends it could be achieved without penalizing those defendants who plead not guilty and elect a jury trial, so that the death penalty provision " 'needlessly penalize[d] the assertion of a constitutional right.' " *Id.* at 746, 90 S.Ct. at 1467, *quoting Jackson*, 390 U.S. at

583, 88 S.Ct. at 1217 (emphasis added). We agree with the able judge below that these cases stand for the proposition that we must balance the need for the challenged statute against its chilling effect on the exercise of the parties' constitutional rights.[2]

## III

Turning first to the need for the forfeiture scheme, the City concedes the importance of economic security in old age, but contends that the State legislature has a legitimate interest in deeming those whose conduct warrants discharge—regardless of whether the grounds constitute misconduct—as undeserving of a pension. It is unnecessary to address whether this is a compelling interest because, as the district judge points out, the statute does not operate to further such an interest. Under the present scheme a teacher who sexually molests a child may resign and receive a pension, yet a teacher forfeits his pension after a quarter-century of faithful and competent service if a hearing panel finds that he can no longer maintain class discipline. The injustice of this is plain. All the guilty teachers can resign, take their money and run. Those believing themselves innocent of the charges must stake their economic future on a panel decision. Clearly, the scheme does not further the asserted state interest, much less a compelling one. Thus, the scheme's operation itself refutes the City's claim that the burden on a teacher's right to a hearing is justified.

Unquestionably, the scheme has a chilling effect. The City does not dispute that Vernon, after being exonerated at the hearing level and believing herself innocent, nonetheless resigned to protect herself from the vicissitudes of litigation on appeal, thereby casting herself falsely in the light of one condemned. *See Matter of Marland v. Ambach,* 79 A.D.2d 48, 50, 436 N.Y.S.2d 360 (3rd Dep't 1981), *aff'd,* 59 N.Y.2d 711, 463 N.Y.S.2d 422, 450 N.E.2d 228 (1983) (finding it "obvious" that a retirement made in the face of pension loss is involuntary and made under duress). The *Brady* majority emphasized that it "would have serious doubts about this case if the encouragement of guilty pleas by offers of leniency substantially increased the likelihood that defendants, advised by competent counsel, would falsely condemn themselves." *Brady,* 397 U.S. at 758, 90 S.Ct. at 1474. The difference in the reliability of the admissions of guilt of criminal defendants and of teachers facing discharge hearings is no doubt in part due to the difference between the standards of proof. Criminal defendants must be found guilty beyond a reasonable doubt; charges against teachers merely have to be proved by a preponderance of the credible evidence. A teacher's stakes on such a "bet" are so high, that given these poor odds, the City has effectively eliminated that teacher's access to a forum to vindicate his or her innocence. *See Ex parte Young,* 209 U.S. 123, 147, 28 S.Ct. 441, 448, 52 L.Ed.2d 714 (1908).

The City must therefore redraft the offending provision so as either to eliminate or acceptably minimize the chilling effect. This could be accomplished by eliminating the choice of resigning and retaining the pension. Alternatively, it could be acceptably minimized were the hearing panel empowered to make a separate determination of whether the reasons for discharge warranted forfeiture.[3] For the reasons dis-

---

2. Judge Glasser turned to "right-to-travel" cases to find a more precise means of weighing the two factors. *See Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (indigent medical care); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (voter registration); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (welfare benefits). He concluded that the State must show a compelling interest before it can penalize the exercise of the

fundamental right to a predismissal hearing. For the reasons discussed in Section III, we find it unnecessary to adopt this analysis.

3. Contrary to the dissent's characterization of our holding, we do not hold that teachers should not be permitted to resign as of right during the pendency of charges. There will be no unconstitutional chilling if a separate determination of whether there has been misconduct warranting forfeiture is made, which, in any

cussed below a separate determination that a teacher's conduct warrants forfeiture of his or her pension is constitutionally compelled.

## IV

Plaintiffs' claim that the forfeiture provision violates their due process rights is premised on their assertion that they have a property interest. The district court judge rejected that premise, finding that a terminated employee has no legal entitlement under State law to a pension and that, therefore, plaintiffs' pension rights were not subject to due process protection. We disagree. Although plaintiffs do not have an entitlement to their pensions as such, they do have a contractual right to a pension under the State Constitution upon fulfilling the statutory conditions, and this contractual right is a property interest under State law. In light of this property interest, the State may not arbitrarily condition the right of teachers to receive a pension without running afoul of the 14th Amendment.

■ We begin by recognizing that property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Hence, we look to state law to determine whether a property interest exists, recognizing that a "property interest in employment can, of course, be created by ordinance, or by an implied contract." *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) (footnote omitted); *Goetz v. Windsor Central*

*School District,* 698 F.2d 606, 608 (2d Cir. 1983). Once a state creates a property interest it may not later say that the interest does not exist, because by then federal protections will have attached. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 447–48 (2d Cir.1980). These state property rights have been taken, so to speak, under the wing of the 14th Amendment's protection, and safely shielded there from diminishment or infringement. Accordingly, the creation of a property interest is found by reference to state law, but once found its sufficiency as protected property in the constitutional sense is decided by federal standards. We look first therefore to state law.

■ The statutory scheme places two conditions on teachers' pension benefits: 15 years of service and retirement or resignation.[4] The City contends that these conditions are conditions precedent, and until a teacher satisfies these conditions, any property interest in the pension remains inchoate. Relying on *Matter of Eberle v. La-Guardia,* 285 N.Y. 247, 33 N.E.2d 692 (1941), the district judge agreed with the City that an individual's pension rights do not vest until he satisfies all of the stated conditions, including retirement or resignation. *See also Robbins v. Police Pension Fund,* 321 F.Supp. 93 (S.D.N.Y.1970) (police officer's pension rights did not vest because he failed to meet a statutory requirement that he be a member of the police department without termination or forfeiture of office at the time he applied for pension). *Eberle* involved a claim of entitlement to a pension by a discharged civil servant who had been dismissed upon

event, we find constitutionally compelled in Section III. Thus, there is no need or reason to eliminate the option of resigning and receiving a pension. In fact, we seriously question, but need not address whether eliminating the option would be allowed under Section 7 of article V of the State Constitution, N.Y. Const. art. V, § 7.

4. Section B20–44.2 provides in pertinent part:
   *Vested retirement rights*—a. [A]ny contributor who has been a member of the retirement system and has had fifteen or more years of accredited service.... who discontinues service in the schools or colleges of the city other than by death or retirement or dismissal and who does not withdraw his accumulated deduction shall have a vested right to receive a deferred retirement allowance on attaining the age at which he would first be eligible had he remained in service.... Such member shall be known as a discontinued member.
   New York City Administrative Code ch. 20, title B, § B20–44.2.

a finding that he was guilty of misconduct. He argued that "the deductions from his salary and the expected benefits of the retirement plan constituted a part of his compensation during his tenure of office and that to deprive him of such benefits now would deprive him of compensation which has already been earned." 285 N.Y. at 253, 33 N.E.2d 692. Rejecting that argument, the New York Court of Appeals held that while the Code granted members of the City certain "contractual" or "quasi-contractual" rights, only when the statutory conditions for retirement were met did those rights vest. 285 N.Y. at 251, 33 N.E.2d 692. As Eberle was removed from City service before his retirement became effective, the court found that the teacher had not met the statutory conditions and had no vested right to a pension. He was not deprived of compensation already earned, the court explained, because the statute gave him no right to a pension. *See id.*

The City urges that the teachers' pension rights are created and defined by the Administrative Code provisions, as construed in *Eberle*. But *Eberle* no longer governs this question. Section 7 of article V of the State Constitution (the effective date of which was postponed until July 1, 1940) provides that "membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be impaired." N.Y. Const. art. V, § 7. The Constitutional Convention specifically rejected a proposal that "a city be able to [provide] by statute or local law in force at the time of the commencement of such membership that the system in such city shall not be contractual in character." *Journal of the Constitutional Convention of the State of New York* 425 (1938). *See* Annot., 52 A.L.R.2d 437, 467–70 (1957) (discussing effect of the amendment and characterizing *Eberle* as among cases "of historical interest").

As the New York Court of Appeals explained in *Birnbaum v. Teachers Retirement Systems*, 5 N.Y.2d 1, 176 N.Y.S.2d 984, 152 N.E.2d 241 (1958), the purpose of

section 7 was "to fix the right of the employee at the time he became a member of the system" and to "prohibit their diminution or impairment *prior to retirement.*" *Id.* at 9, 176 N.Y.S.2d 984, 152 N.E.2d 241 (emphasis in original). The district court correctly noted that since the provision challenged here existed prior to the constitutional amendment it was not affected by it. It also correctly noted that as the provision was in effect at the time these teachers took their jobs there could be no impairment due to unsettled expectations, which was the purpose of the amendment. But these points lead only to a conclusion that the challenged provision does not violate the no-impairment clause of the State Constitution. They do not address the question of whether the constitutional amendment, as interpreted by *Birnbaum*, established that teachers have a property interest in their contractual right to a pension prior to their retirement. The opinion below glosses over the distinction between nonimpairment of settled expectations and government regularity.

The *Birnbaum* court specifically rejected the proposition that pension rights remain inchoate prior to retirement. "[T]he theory that '[p]rior to retirement ... the member's rights are inchoate' " was the "very theory that the constitutional amendment was designed to set at rest." *Birnbaum*, 5 N.Y.2d at 8, 176 N.Y.S.2d 984, 152 N.E.2d 241. The Court of Appeals specifically held that pension rights "vest" at the time the employee became a member in the system. *Id.* at 9, 176 N.Y.S.2d 984, 152 N.E.2d 241. The court stated that the purpose of the amendment was to reject the view of an earlier case, relied on in *Eberle*, which had held that "down to the point where there has been compliance with all precedent conditions and the award has been or as of right should have been made," the member's interest remained "revocable at the will" of the State. *Id.* at 8, 176 N.Y.S.2d 984, 152 N.E.2d 241. It is not within our province to hold that New York's highest court meant something oth-

er than what it said when interpreting the New York State Constitution.

## V

The view compelled by *Birnbaum* is that a property interest in contractual rights to a pension vests when a teacher becomes a member of the retirement system, subject to being divested if the two statutory conditions are not met. Viewed in this light, the statutory scheme operates the same as the one in *Greene v. McGuire*, 683 F.2d 32 (2d Cir.1982). In that case, we held that under the governing state law, New York City police officers lost whatever property interest they had in their continued employment upon being convicted of a felony. The provision was a "condition on the jobs" that was "as explicit as a clause in their contract." *Id.* at 35. "Once [the officers] were convicted—and the condition fulfilled—they lost their property interest." *Id.* Recognizing that the government may not deprive a person of a property interest arbitrarily, we specifically found that the provision was not arbitrary because an officer lost his job "only after a determination by an independent body that the officer had been guilty of serious misconduct." *Id.* Thus, we must now turn to the question of whether the forfeiture provision considered here arbitrarily denies teachers pensions that they have earned.

We must examine whether the challenged Code provision rationally advances the public policy served by pension forfeiture in light of what pensions represent under state law. *Eberle*'s rejection of the argument that the dismissed teacher was entitled to a pension because the pension represented deferred compensation was in keeping with the earlier view of pensions as a gratuity. Under this view, pensions were deemed akin to a gold watch given only to those in good standing. A long line of cases subsequent to *Eberle* have made it clear that pensions represent deferred compensation aimed at promoting long and faithful service. *See, e.g., Birnbaum*, 5 N.Y.2d at 9, 176 N.Y.S.2d 984, 152 N.E.2d 241; *Matter of Gordon v. Monaghan*, 309

N.Y. 336, 342, 130 N.E.2d 882 (1955). The clear import of article 5, section 7 of the State Constitution is to "give[ ] all employees ... a guarantee that no future legislative body can take away the benefits which he may be presumed to have fairly *earned by reason of his previous service.*" *Journal of the Constitutional Convention of the State of New York*, Doc. No. 11 at 4 (1938) (emphasis added).

The only justifiable public policy served by pension forfeiture is the deterrence of misconduct in violation of the public trust. That is the rationale of *Eberle* and *Robbins*. In *Eberle*, which involved an unexplained shortage of funds, the New York Court of Appeals addressed itself to charges of "fault and delinquency." 285 N.Y. at 249, 33 N.E.2d 692. Similarly, the district court in *Robbins* feared that without the threat of the loss of pension rights those in positions of public trust would heedlessly engage in improper behavior. 321 F.Supp. at 98.

But because deterrence of misconduct is its purpose, the forfeiture provision is overbroad. Under the present scheme, teachers often lose their pension rights on grounds not constituting misconduct. A separate determination of whether the individual has in fact engaged in misconduct is necessary to save the scheme from unconstitutional arbitrariness. Absent a determination that an employee is guilty of misconduct, termination of his contractual right to a pension is a deprivation of property without procedural due process of law. We may not second-guess the hearing panel's definition of what constitutes misconduct, but we hold that the statute must grant it the authority to make such a determination.

Inevitably there will be questions about what process the City must provide in making its separate determination. We do not believe that a full trial-like hearing is necessary. An individual teacher is already entitled to participate personally in a hearing over the reasons for discharge. The determination of those grounds will necessarily overlap with the question of whether

there was misconduct sufficient to warrant forfeiture of the individual's pension. A second trial-like hearing therefore is not needed because there is no indication that it would improve the accuracy of the determination. *See Basciano v. Herkimer*, 605 F.2d 605, 609–10 (2nd Cir.1978) (reasonably reliable determination of eligibility for accident disability retirement benefits can be made without trial-like hearing). The panel need merely be empowered at the hearing held to make a separate determination of whether the employee is guilty of misconduct warranting forfeiture.

As Professor Charles A. Reich explained in his classic article, *The New Property:*

No form of government largess is more personal or individual than an old age pension. No form is more clearly earned by the recipient... No form is more obviously a compulsory substitute for private property; the tax on wage earner and employer might readily have gone to higher pay and higher private savings instead. No form is more relied on, and more often thought of as property. No form is more vital to the independence and dignity of the individual.

Reich, *The New Property*, 73 Yale L.J. 733, 769 (1964). Due process requires that this form of government largess can be denied New York State public employees only if the individual's service—even though long—has not been faithful.

**VI**

In light of this conclusion we find it unnecessary to address plaintiffs' claim that the forfeiture provision also violates their rights to equal protection of the law and substantive due process. Accordingly, the decision below is affirmed in part and reversed in part. We remand the case to the district court with a direction that it enter an order declaring plaintiffs' rights in accordance with this opinion.

VAN GRAAFEILAND, Circuit Judge, dissenting:

I agree with my colleagues that, in determining whether New York City school teachers have a property interest in their pension rights protected under the federal constitution, we must look to the law of New York State, particularly as that law is laid down by the New York Constitution. However, when it comes to interpreting and applying article V, section 7, the pertinent portion of the New York Constitution, my colleagues and I part company.

Section 7 provides that, after July 1, 1940, membership in a retirement system such as that of the New York City teachers "shall be a contractual relationship, the benefits of which shall not be diminished or impaired." The New York courts have made it crystal clear that, because of this constitutional provision, subsequent legislation may not diminish rights or vested interests possessed by a Retirement System member at the time he joined the System. *See Robinson v. New York State Employees' Retirement System*, 46 N.Y.2d 747, 749, 413 N.Y.S.2d 644, 386 N.E.2d 253 (1978) (*mem.*); *Donner v. New York City Employees' Retirement System*, 33 N.Y.2d 413, 416, 353 N.Y.S.2d 428, 308 N.E.2d 896 (1974); *Matter of Ayman v. Teachers' Retirement Board of the City of New York*, 9 N.Y.2d 119, 124–25, 211 N.Y.S.2d 198, 172 N.E.2d 571 (1961). These are contract rights which article I, section 10 of the United States Constitution requires this Court to protect, not to abrogate. *See United States Trust Co. v. New Jersey*, 431 U.S. 1, 14–32, 97 S.Ct. 1505, 1513–1523, 52 L.Ed.2d 92 (1977); *Indiana ex rel Anderson v. Brand, Trustee*, 303 U.S. 95, 100, 58 S.Ct. 443, 446, 82 L.Ed. 685 (1938).

One of the most firmly established rights possessed by each System member is the right to retire without giving up vested retirement benefits and without regard to whether charges against the member are pending. In *Matter of Rogalin v. New York City Teachers' Retirement Board*, 290 N.Y. 664, 49 N.E.2d 623 (1943), charges were preferred against Rogalin because of his alleged mismanagement of school funds, and he was suspended from his position as a high school principal. On the following day, Rogalin filed an application

for retirement with the Teachers' Retirement Board. The Board, as do my colleagues, argued that a public official should not be permitted to retire as of right during the pendency of charges of misconduct against him which ultimately might result in conviction and dismissal. This argument was rejected by the trial court in an unreported decision, which was affirmed without opinion in the Appellate Division, 265 A.D. 801 (1942), and in the Court of Appeals, 290 N.Y. 664, 49 N.E.2d 623. The trial court stated that the wisdom of the challenged enactment was a matter of legislative and not of judicial concern, and continued:

> Since the language and intent of the statute are clear, it must be followed and may not be the subject of judicial construction for the infusion therein of a preconceived ideal of public policy not actually expressed.

*See also Matter of Pierne v. Valentine,* 266 A.D. 70, 78, 42 N.Y.S.2d 404 (2d Dep't 1943), *aff'd on this point,* 291 N.Y. 333, 343–44, 52 N.Y.S.2d 890 (1943).

My colleagues' somewhat unjudicial remarks concerning presumptions of guilt and "guilty" teachers resigning, taking their money and running, are not very cogent grounds for depriving all System members of the contract right guaranteed them by both the State and federal constitutions to resign without giving up their vested retirement benefits. No teacher is "guilty" until, after proper hearing and judicial review, he is found guilty.

Equally unpersuasive is the majority's professed desire to relieve System members from having to decide whether to resign or face charges. Under the guise of protecting members from having to make a difficult decision, the majority would deprive all members of their constitutionally protected right to make a choice at all.

An equally important right possessed by all members of the Retirement System is that the means designed to assure their benefits should not be impaired and that the sources of funds for their benefits should be protected by insuring appropriate contributions and actuarially sound procedures. *Sgaglione v. Levitt,* 37 N.Y.2d 507, 511, 514, 375 N.Y.S.2d 79, 337 N.E.2d 592 (1975). Each member thus has the contractual right to insist that the assets of the System not be depleted by the making of unauthorized pension payments, a right possessed by every trust beneficiary under the common law, *see Hoffa v. Fitzsimmons,* 673 F.2d 1345, 1353 (D.C.Cir.1982).

It generally is presumed that contracting parties adopt the terms of their bargain in reliance on the law in effect at the time the agreement is reached and that such laws form a part of the contract just as though they were expressly incorporated in its terms. *United States Trust Co. v. New Jersey, supra,* 431 U.S. at 19–20 n. 17, 97 S.Ct. at 1516–1517 n. 17. Under section B20–38.0(2) of the Administrative Code, a member who is dismissed from service loses the right to collect any retirement allowance. Although the member's own contributions to the annuity part of the allowance are repaid him, the contributions of the City and the Board are forfeited. Sections 2573, 2590–j(7)(b), 3020, and 3020–a of the Education Law establish the grounds and procedures for dismissal of System members. All of these statutory provisions are part of the contract between the System and its members. This Court should not assume the role of a super-legislature by amending the statutes, and perforce the contractual rights, of the thousands of Retirement System's members who are not even parties to this litigation.

Agencies of the City of New York have fallen on hard times before, and it is not unreasonable to expect that this will occur again. Unauthorized pension payments to dismissed members have a deleterious effect on the System's solvency whatever the reason for the dismissal. It is simply wrong for this Court to order an amendment of the contract to which all System members are parties, so as to provide that any member dismissed from employment can continue to draw money from the pension funds unless the dismissal was for something bearing the vague label of "mis-

conduct". *See Giaccio v. Pennsylvania,* 382 U.S. 399, 404, 86 S.Ct. 518, 521, 15 L.Ed.2d 447 (1966); *Soglin v. Kauffman,* 418 F.2d 163, 167–68 (7th Cir.1969). As stated by then Justice Bergan in *Gorman v. City of New York,* 280 A.D. 39, 44–45, 110 N.Y.S.2d 711 (1st Dep't 1952), *aff'd mem.,* 304 N.Y. 865, 109 N.Y.S.2d 881, *appeal dismissed,* 345 U.S. 962, 73 S.Ct. 950, 97 L.Ed. 1381 (1953), "the Constitution contemplates a public employment which validly continues until the right to be pensioned matures and it does not imply a restriction upon public authority to remove a member from a public position for valid cause, even though the right to a pension terminates with the removal." "Valid cause" is spelled out in sections 2573, 2590–j(7)(b), and 3020 of the Education Law. It is not synonymous with "misconduct".

My colleagues state quite correctly that Retirement System members have a contractual right to a pension "upon fulfilling the statutory conditions" and hold that "this contractual right is a property interest under State law." They then reject the very "statutory conditions" which define the limit and extent of the "property interest" they purport to recognize. *Cf. Board of Regents v. Roth,* 408 U.S. 564, 577–78, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972). Under the guise of enforcing the procedural requirements of due process, the majority order an amendment of the substantive rights of the parties upon which the procedural requirements of due process are predicated. However, appellees have not established that they have been deprived of a right to substantive due process.

In *Harrah Independent School District v. Martin,* 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979) (per curiam) a school board refused after a hearing to renew a tenured teacher's employment contract because she refused to comply with the board's requirement that she take five hours of continuing education courses over a three year period. The Court held that a claim of substantive due process under such circumstances would in no way resemble "the individual's freedom of choice with

respect to certain basic matters of procreation, marriage, and family life." *Id.* at 198, 99 S.Ct. at 1064 (cases cited). The Court continued:

The School Board's rule is endowed with a presumption of legislative validity, and the burden is on respondent to show that there is no rational connection between the Board's action and its conceded interest in providing its students with competent, well-trained teachers.... Such a course of conduct on the part of a school board responsible for the public education of students within its jurisdiction, and employing teachers to perform the principal portion of that task, can scarcely be described as arbitrary. Respondent's claim of a denial of substantive due process under these circumstances is wholly untenable.

My colleagues' determination that there has been a denial of substantive due process in the instant case is equally untenable. In holding that the pension forfeiture provision is overbroad because its only purpose is the "deterrence of misconduct", my colleagues overlook the "presumption of legislative validity" referred to by the *Harrah* court and the express finding of reasonableness by the district court. 580 F.Supp. at 1476. They also disregard the indisputable interest that the New York Legislature has in providing New York City students with competent and well-trained teachers and in preserving the financial stability of the pension program covering over 55,000 New York City teachers. Indeed, the very reasoning my colleagues employ in arriving at their definition of statutory purpose will not withstand scrutiny. Starting with the unfounded and self-conceived premise that "[t]he only justifiable public policy served by pension forfeiture is the deterrence of misconduct," they leap a substantial gap in logic by concluding that "deterrence of misconduct *is* its purpose." (emphasis supplied). Their holding demonstrates, in sum, why "there is reason for concern lest the only limits to ... judicial intervention become the predelections of those who happen at the time to be [m]embers of this Court." *Moore v. City of East Cleveland,* 431 U.S.

494, 502, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531 (1977).

Under well-settled New York law, Retirement System members may be discharged for the reasons set forth in the Education Law and in accordance with the hearing procedures prescribed by that Law. There is nothing in New York law that entitles a System member to the continued payment of pension benefits by the State if that member was properly discharged for a valid cause, even though the discharge was not for "misconduct". *See Green v. McGuire*, 683 F.2d 32, 37 (2d Cir.1982) (Oakes, J. concurring). The United States Constitution does not require that this Court put it there.

Because I find no merit in appellees' equal protection claims, I would reverse and dismiss the complaint.[1]

---

**1.** A reader of the majority opinion might get the impression that there has been widespread discharge of New York City teachers on grounds such as inefficiency or inability to maintain discipline. In fairness to appellants, it should be stated that no such inference can be drawn from a review of the record. *See* 580 F.Supp. at 1477 n. 7. Moreover, despite the broad scope of the relevant Education Law provisions, the New York courts will reverse the Education Department's decision to dismiss a teacher where the sanction of dismissal "is so disproportionate to the offense as to 'shock the conscience of the court'". *Harris v. Mechanicville Dist.*, 45 N.Y.2d 279, 284, 408 N.Y.S.2d 384, 380 N.E.2d 213 (1978) (quoting *Matter of Pell v. Board of Educ.*, 34 N.Y.2d 222, 232–35, 356 N.Y.S.2d 833, 313 N.E.2d 321 (1974)).