**Lawrence E. GILLOTT, Plaintiff,**

v.

**The CITY OF NEW YORK, the Police Department of the City of New York, and the Board of Trustees Police Pension Fund (Article II), Defendants.**

**No. 86 Civ. 1695 (LLS).**

United States District Court,
S.D. New York.

June 10, 1987.

Jerold Probst, New York City, for plaintiff.

Frederick A.O. Schwarz, Jr., Corporation Counsel of the City of New York, New York City, for defendants; Susan H. Rockford, Asst. Corp. Counsel, of counsel.

## OPINION AND ORDER

STANTON, District Judge.

Plaintiff Lawrence Gillott, a former New York City police officer, brings this action pursuant to 42 U.S.C. § 1983 ("§ 1983") against the defendants, alleging that he was unconstitutionally deprived of his accident disability pension. Defendants have moved for summary judgment.

## BACKGROUND

Plaintiff Gillott was appointed to the Police Department of the City of New York on June 25, 1973, and thereafter became a member of the Police Pension Fund, Article II ("Pension Fund") (Agreed Finding of Fact # 1.)

On September 9, 1979 plaintiff was injured (Complaint ¶ 5) and filed an application for accident disability retirement with the Pension Fund. (Agreed Finding of Fact # 2.) On April 26, 1983, the Medical Board of the Pension Fund ("Medical Board") certified to the Board of Trustees of the Pension Fund ("Pension Board") that Officer Gillott was disabled by a service-incurred injury and recommended that the Pension Board approve his application. (Agreed Finding of Fact # 3.)

On May 4, 1983, plaintiff was served by the Police Department with written charges and specifications, charging him with accepting bribes and failing to report the misconduct of other policemen. (Agreed Finding of Fact # 4.)

By letter dated May 16, 1983, plaintiff's attorney, Mr. Barry Agulnick, was informed by Mr. J. Rios, Deputy Commissioner for Police Department Trials ("Commissioner Rios"), that the date for the disciplinary hearing had been scheduled for May 26, 1983 since Gillott "may in the near future be considered for retirement by the Pension Board." (Agreed Finding of Fact # 5.) Mr. Agulnick was told that "[i]n the event you wish to adjourn this matter beyond [May 26, 1983], I will do so only if Gillott waives in writing the Pension Board's consideration of his disability application pending the outcome of the disciplinary trial." *Ibid.* This withdrawal re-

quirement is applied to every member of the Police Department who seeks an adjournment of a disciplinary hearing while he has a retirement application pending before the Pension Board. *Ibid.*

Plaintiff contends that the advance notice he received was insufficient as it did not provide the necessary time needed for pre-trial discovery and trial preparation. (Plaintiff's Proposed Findings of Fact ¶¶ 2, 6.) He also claims that Commissioner Rios stated that he would find him guilty as charged unless he waived consideration of his disability application (Gillott Aff., sworn to August 20, 1986 ¶ 4) and that under the circumstances he reluctantly deferred his disability application. *Ibid.*

By letter dated May 24, 1983, Mr. Agulnick advised Commissioner Rios that "my client Lawrence Gillot withdraws his papers from consideration for retirement from the meeting of the June 7 Pension Board. This I trust will eliminate the need to have a trial on May 26, 1983." (Agreed Finding of Fact # 6.)

On May 27, 1983, Commissioner Rios acknowledged receipt of Mr. Agulnick's May 24 letter and stated that he had informed the Pension Board of Mr. Gillott's request that consideration of his disability retirement be postponed beyond June 7, 1983. Commissioner Rios further informed Mr. Agulnick "that the Pension Board will convene again in July 1983, at which time it is conceivable that Police Officer Gillott's retirement will be considered. Therefore, I have adjourned the ... disciplinary matter to June 15, 1983. Please be prepared to proceed to trial on said date." (Agreed Finding of Fact # 7.)

Subsequent requests by plaintiff for adjournments of the disciplinary trial were granted in June, July, August and September, 1983. In each case, plaintiff withdrew his retirement application from consideration by the Pension Board. (Agreed Finding of Fact # 8.) Plaintiff was tried on October 20, 24 and 25, 1983. (Agreed Finding of Fact # 9.) On the last day of trial, he signed a waiver of consideration of his pending retirement application until the fi-

nal adjudication of the disciplinary charges. (Agreed Finding of Fact # 8.)

In the Findings on the Charges dated April 4, 1984, Commissioner Rios found Gillott guilty and recommended his dismissal. (Memorandum of Law in Support of Defendants' Motion for Summary Judgment, p. 4.) Commissioner Ward, accepting the findings and recommendation, dismissed Gillott from the Police Department on May 16, 1984. (Agreed Finding of Fact # 9; Gillott Aff., sworn to August 20, 1986, ¶ 3.)

On June 20, 1984, the Pension Board considered plaintiff's application. Because he was no longer a "city-service" employee, the Pension Board did not have jurisdiction to retire him on disability grounds. (Agreed Finding of Fact # 10.) Plaintiff never received a disability pension.

## DISCUSSION

### A. Due Process Claim

Plaintiff claims that he was denied his disability pension without due process of law because he was coerced into withdrawing his application for a disability pension, which had vested, and by the time the application was reactivated the Pension Board had lost jurisdiction to retire him because of his intervening dismissal. Particularly, plaintiff contends that his original trial date gave insufficient time to prepare, forcing him to seek an adjournment. Pursuant to Police Department practice, the adjournment was only granted if Gillott withdrew his pending disability application, which he contends the Pension Board otherwise had to approve. Plaintiff also claims that he would have been found guilty if he did not withdraw his application.

Before due process is implicated, plaintiff must establish that the interest of which he was deprived is protected by the Constitution and federal laws. *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). It is undisputed that Gillott had a contractual right, which

is a property interest under New York State law, to a disability pension. *See Winston v. City of New York*, 759 F.2d 242, 247–49 (2d Cir.1985); *Basciano v. Herkimer*, 605 F.2d 605, 609 (2d Cir.1978), *cert. denied*, 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.2d 296 (1979); *Robbins v. Police Pension Fund*, 321 F.Supp. 93, 97–98 (S.D.N.Y. 1970).

"Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation" of property. *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1982). In deciding "what process constitutionally is due ... the Court repeatedly has emphasized that 'procedural due process rules are shaped by the risk of error inherent in the truth-finding process....'" *Ibid.* (*quoting Mathews v. Eldridge*, 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976)). The procedure which resulted in the deprivation of Gillott's contractual right to a disability pension adequately guarded against a mistaken or unjustified deprivation.

### 1. Scheduling of Original Disciplinary Hearing

■ Due process requires that the party whose interest will be affected by the official action receive notice "reasonably calculated, under all circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Gillott, served on May 4, 1983, states that "as soon as I was served with Charges and Specifications, Commissioner Rios immediately fixed a trial date, without having ascertained whether I had engaged counsel." (Gillott Aff., ¶ 4.) Since the trial was scheduled for May 26, 1983, plaintiff was given 22 days notice although because of his delay in hiring counsel, his attorney had but 10 days written notice. *See* Agreed Finding of Fact # 5. This notice period was a reasonable one. *See Evans v. Monaghan*, 306 N.Y. 312, 118 N.E.2d 452 (1954) (2 days notice did not prevent a fair disciplinary hearing); *compare In re Oli-*

*ver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (petitioner deprived of due process right to notice and hearing when, immediately after testimony before one-judge-grand-jury, he was charged and convicted of contempt and sent to jail). Moreover, while plaintiff argues that the notice period was too short for discovery and preparation, he provides no factual support for the claim.

### 2. Adjournment Request and Police Department's Withdrawal Requirement

Having given plaintiff timely notice of his disciplinary hearing, the Police Department then conditioned any adjournments on plaintiff's written withdrawal of his pension application. This requirement is applied to every member of the Police Department who seeks an adjournment of a disciplinary trial while he has a retirement application pending before the Pension Board (Agreed Finding of Fact # 5) and serves "the public policy of [New York] not to pension employees who have betrayed the faith reposed in them by virtue of their position" *Mahoney v. McGuire*, 107 A.D.2d 363, 366, 487 N.Y.S.2d 13, 16 (1st Dep't), *aff'd*, 66 N.Y.2d 622, 495 N.Y.S.2d 29, 485 N.E.2d 236 (1985); *see Evans v. Monaghan*, 306 N.Y. at 322–23, 118 N.E.2d at 457 (proper to conduct disciplinary trial expeditiously when officers had pending pension applications); *see also Winston v. City of New York*, 759 F.2d 242, 249 (2d Cir. 1985) (public policy served by pension forfeiture is deterrence of misconduct in violation of public trust); *Robbins v. Police Pension Fund*, 321 F.Supp. 93, 97–98 (S.D. N.Y.1970) (same), by maintaining the status quo until the disciplinary charges are resolved.

Gillott states that when he and his attorney went to Commissioner Rios to request an adjournment,

Commissioner Rios stated, in my presence, 'There will be no adjournment. We can hold night court and continue from day to day and into the night until this matter is completed.' In the same conversation, Mr. Rios stated that unless I waived consideration of my disability ap-

plication before the Board of Trustees, that Commissioner Rios would 'find me guilty' as charged. Under these circumstances, and not knowing what my rights were, I reluctantly executed a waiver of consideration of my disability application before the Board of Trustees.

(Gillott Aff., ¶ 4.) In the event, however, Gillott obtained an adjournment. In order to get it, pursuant to the Police Department's practice, he had to withdraw his retirement application.

3. Police Department's Withdrawal Requirement and Gillott's Contractual Right to a Disability Pension

■ Gillott did not have a vested right to a disability pension when he withdrew his application. Even before the disciplinary charges were filed against him, the Pension Board was not required to retire him merely because he had been certified for accident disability by the Medical Board.[1] *See Canfora v. Board of Trustees of Police*

*Pension Fund,* 60 N.Y.2d 347, 469 N.Y. S.2d 635, 457 N.E.2d 740 (1983) (Pension Board not bound by Medical Board's determination that the disability resulted from service-related accident).

■ More significantly, once the disciplinary charges against Gillott were filed it was proper, if not mandatory, for the Pension Board to defer his application until the charges were resolved; and he could not have compelled the Board to act otherwise. *See Mahoney v. McGuire,* 107 A.D.2d 363, 487 N.Y.S.2d 13 (1st Dep't), *aff'd,* 66 N.Y.2d 622, 495 N.Y.S.2d 29, 485 N.E.2d 236 (1985); *Pierne v. Valentine,* 291 N.Y. 333, 52 N.E.2d 890, 894 (1943); *Delia v. Valentine,* 185 Misc. 202, 203, 56 N.Y.S.2d 505, 506 (N.Y.Sup.Ct.1945).[2] The statutory provision that the Pension Board "shall retire [a member certified by the Medical Board for accident disability retirement] forthwith"[3] does not prohibit the Pension

---

1. To the extent that *Basciano v. Herkimer,* 605 F.2d 605 (2d Cir.1978), *cert. denied,* 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.2d 296 (1979) may be interpreted to expand plaintiff's contractual right to a disability pension beyond that defined in New York case law, the New York cases control. *See Board of Regents v. Roth,* 408 U.S. 564, 577 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (it is not the Constitution, but rather "existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits" which create property interests); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 447–48 (2d Cir.1980) (the primary source of property rights is state law). Further, plaintiff's reliance upon the holding in *City of New York v. Schoeck,* 294 N.Y. 559, 63 N.E.2d 104 (1945) is misplaced because the relevant code provision interpreted in *Schoeck* contains a materially different provision from the code section here. *Compare Schoeck,* 63 N.E.2d at 106 (§ B19–2.0 of New York Administrative Code) *with* § 13–252 of the New York Administrative Code (footnote 3).

2. Plaintiff, citing *Edwards v. Codd,* 59 A.D.2d 148, 398 N.Y.S.2d 153 (1st Dep't 1977), claims that the Pension Board had a duty to consider his application despite the pending disciplinary charges. *Edwards* does not entitle an officer to have the Pension Board consider his application when he has unresolved disciplinary charges filed against him. *See Mahoney v. McGuire,* 107 A.D.2d 363, 365, 487 N.Y.S.2d 13, 15 (1st Dep't),

*aff'd,* 66 N.Y.2d 622, 495 N.Y.S.2d 29, 485 N.E.2d 239 (1985).

3. Section 13–252 of the New York Administrative Code (Police Pension Funds) sets forth the statutory requirements for entitlement to an accident disability retirement pension:

Medical examination of a member in city-service for accident disability and investigation of all statements and certifications by him or her or on his or her behalf in connection therewith shall be made upon the application of the commissioner, or upon the application of a member or of a person acting in his or her behalf, stating that such member is physically or mentally incapacitated for the performance of city-service, as a natural and proximate result of such city-service, and certifying the time, place and conditions of such city-service performed by such member resulting in such alleged disability and that such alleged disability was not the result of wilful negligence on the part of such member and that such member should, therefore, be retired. If such medical examination and investigation shows that such member is physically or mentally incapacitated for the performance of city-service as a natural and proximate result of an accidental injury received in such city-service while a member, and that such disability was not the result of wilful negligence on the part of such member and that such member should be retired, the medical board shall so certify to the board, stating the time, place and conditions of such city-service performed by such member resulting in such disability, and such board shall retire such member for accident disability *forthwith.* (emphasis added)

Board from deferring consideration of an application until resolution of disciplinary charges, but only precludes unwarranted or unnecessary delays. *Mahoney v. McGuire,* 66 N.Y.2d 622, 495 N.Y.S.2d 29, 485 N.E.2d 236 (1985).

### 4. Loss of Contractual Right to Disability Pension

■ Plaintiff was found guilty of accepting bribes and failing to report the misconduct of fellow officers, and was dismissed from the Police Department. When the Pension Board considered plaintiff's application on June 20, 1984, it "no longer had jurisdiction of plaintiff's application because he had been dismissed from the Police Department." (Agreed Finding of Fact # 10.) The Pension Board can decline to act on an officer's disability application when he is not employed by the City at the time the Board considers the application. *Glazer v. Board of Trustees of Police Pension,* 66 A.D.2d 759, 760, 411 N.Y.S.2d 611, 612 (1st Dep't 1978), *aff'd mem.,* 48 N.Y.2d 790, 423 N.Y.S.2d 923, 399 N.E.2d 953 (1979).

■ Upon his dismissal, Gillott automatically lost his contractual right to a pension because of the Pension Board's lack of jurisdiction to retire a dismissed officer on disability grounds. Here, where Gillott was dismissed after he was found guilty of serious misconduct during an independent and apparently fair hearing, *see generally Leggio v. McGuire,* 552 F.Supp. 988, 990 (S.D.N.Y.1982), his claim to a disability pension was lost in a constitutionally acceptable manner. *Compare Winston v. City of New York,* 759 F.2d 242 (2d Cir.1985) (absent a separate determination that an employee is guilty of serious misconduct, automatic forfeiture of his contractual right to a pension upon dismissal is unconstitutional).

Gillott was not deprived of a vested right in his accident disability pension. The procedure which required the adjudication of serious disciplinary charges filed against Gillott before the Pension Board considered his application did not cause a mistaken or unjustified deprivation of his disability pension. Nor did the Pension Board's inability to consider the merits of his application because of his intervening dismissal unconstitutionally deprive Gillott of his disability pension.

### B. Equal Protection Claim

Plaintiff also claims that his right to equal protection was violated by the Police Department's withdrawal requirement because "there is no rational basis to differentiate between the granting of adjournments of a disciplinary trial to police officers who have no pending disability applications and the denial of adjournments to those police officers who were certified by the medical board...." Complaint ¶ 13.

■ The Police Department's practice of conditioning adjournments for an officer who has a pending pension application on the withdrawal of that application is reasonably aimed at limiting pension benefits to public employees who have been faithful, a valid state purpose. *See Winston v. City of New York,* 759 F.2d 242, 249 (2d Cir.1985).

### CONCLUSION

Plaintiff was not deprived of his accident disability pension without due process of law. Nor was his equal protection right violated by the Police Department's withdrawal requirement. Defendants' motion for summary judgment is granted.

The Clerk is directed to dismiss the complaint.